164 Cal.App.4th 18 (2008)
LEE MAX BARNETT, Petitioner,
v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
No. C051311.
Court of Appeals of California, Third District.
June 19, 2008.
*26 Quin Denvir and Daniel J. Broderick, Federal Defenders, Jennifer M. Corey, Assistant Federal Defender; and Robert D. Bacon for Petitioner.
No appearance for Respondent.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Mary Jo Graves, Assistant Attorney General, Ward A. Campbell, Michael P. Farrell and Eric L. Christoffersen, Deputy Attorneys General, for Real Party in Interest.

OPINION
ROBIE, J.
This writ proceeding arises out of Penal Code[1] section 1054.9, which allows persons subject to a sentence of death or life in prison without the possibility of parole to file a motion for postconviction discovery to assist in seeking a writ of habeas corpus or an order vacating the judgment. In 2004, petitioner Lee Max Barnett filed a comprehensive motion for discovery under section 1054.9 in Butte County Superior Court. Ultimately, the court granted many of Barnett's requests but denied many others. Barnett brought this writ proceeding to challenge the denials.
In an earlier opinion in this proceeding, we decided a number of issues left unresolved by In re Steele (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444], a California Supreme Court decision that had decided some "important procedural and substantive issues regarding" section 1054.9. (In re Steele, at p. 688.) Following the issuance of our opinion, the Supreme Court granted review, then transferred the matter back to us with directions to decide a new issue that had been raised by one of the amicus curiae on behalf of the *27 People, namely, whether section 1054.9 was an invalid amendment to the criminal discovery statutes that were enacted by initiative as part of Proposition 115 in 1990.
As we will explain, we conclude section 1054.9 was not an invalid amendment to the criminal discovery statutes. We will also conclude (as we did in our earlier opinion) that the trial court did not abuse its discretion in denying some of Barnett's requests but did abuse its discretion in denying others, and therefore we will grant Barnett's petition in part and deny it in part. In reaching that result, we conclude (among other things) that (1) in requesting materials pursuant to section 1054.9, a defendant does not have to provide the People with an inventory of every single document or other item the defendant possesses already; (2) section 1054.9 does not give a defendant the right to have the court order duplicative discovery; (3) section 1054.9 does not provide a vehicle for a defendant to enforce any obligation the People may have to produce exculpatory evidence they did not possess at time of trial; and (4) an unsworn denial of the existence of any further responsive documents is not a valid basis for upholding the denial of a defendant's motion for discovery under section 1054.9.

FACTUAL AND PROCEDURAL BACKGROUND
In 1988 in Butte County, Barnett was convicted of the murder of Richard Eggett (as well as other crimes) and sentenced to death. In 1998, the California Supreme Court affirmed his convictions and sentence. (People v. Barnett (1998) 17 Cal.4th 1044, 1075, 1104, 1183 [74 Cal.Rptr.2d 121, 954 P.2d 384].)
In July 2004, Barnett filed a discovery motion pursuant to section 1054.9.[2] At the time, he had two petitions for habeas corpus pending in the California Supreme Court and one pending in federal court.[3]
*28 In his discovery motion, Barnett sought various materials, including materials now missing from the numbered discovery provided during trial, materials the prosecution allegedly failed to produce in response to a discovery order during trial, and various other materials.
At a hearing on the motion in November 2004, in front of the same judge who had served as the trial judge 16 years earlier, the prosecutor told the court the parties had been working together outside of court to narrow the issues. Barnett's counsel agreed they had "made a lot of progress," but both sides acknowledged there would be areas of disagreement. Ultimately, the parties agreed to meet and confer on a proposed briefing schedule to address those areas of disagreement.
In December 2004, the court entered an order setting a briefing schedule to address "each specific item remaining at issue" and setting a further hearing for March 2005. Pursuant to the briefing schedule, Barnett filed a supplemental brief that identified 60 different items or categories of items that he was seeking to discover.
The People were to file their brief in January 2005, but failed to do so. In February, pursuant to the ordered briefing schedule, Barnett filed his reply brief asking the court to "grant discovery of all items requested in the amended discovery motion" due to the People's failure to file their brief.
At the hearing in March, the prosecutor apologized for failing to file his brief and said he would "like to try another round of informal [discussion with opposing counsel] before we involve the Court." Barnett's counsel agreed.
At a status conference in April, at the request of Barnett's counsel, the court ordered the People to produce by May 12 everything they were going to agree to produce. The parties and the court would then address "any areas of disagreement" at another status conference already set for July.
At the July status conference, Barnett's counsel acknowledged that the People had produced over 300 pages of discovery materials and 64 compact discs of audiotape recordings. Ultimately, it was agreed Barnett would file a further supplemental brief in August, with the People's response to follow in September.
In their response, the People argued, among other things, that: (1) "in requesting materials pursuant to section 1054.9, a petitioner must show that the requested materials are not in his possession"; (2) to be entitled to an order for the production of documents, the prosecution was required, but *29 failed, to disclose at trial, "a petitioner must overcome a presumption that the prosecution properly fulfilled its discovery obligations at trial"; and (3) to succeed on a motion under section 1054.9, "a petitioner must establish a good faith basis to believe the materials requested actually exist." The People also specifically responded to many of Barnett's discovery requests by noting that "[n]othing exists as to this request beyond that already disclosed to petitioner."
A further hearing on the discovery motion was held in October 2005, and in November the trial court issued its ruling, granting some requests and denying others. As to the requests the trial court granted, the court ordered that "if there [are] no discovery materials or no further discovery materials to be provided beyond what has already been provided, then the [People] should so state in a written declaration to be provided petitioner-defendant on or before the discovery deadline. [¶] The declaration should state the factual basis for the conclusion, quote, nothing exists to be discovered as to this item of discovery, end quote; or, quote, nothing exists as to the discovery item beyond what has already been provided, end quote. [¶] The declaration should address what efforts were made to find the item or items of discovery, including what, if any, agencies or individuals were contacted and their responses."
As to the requests the trial court denied, the court did not offer a separate reason for its ruling as to each request, but stated only that it was doing so "because I find that particular request falls outside the guidelines set forth in the Steele decision."
On November 30, 2005, Barnett commenced this proceeding by filing a petition for writ of mandate in this court seeking to compel the trial court to grant the various discovery requests it had denied. We ordered the issuance of an alternative writ of mandate, then issued our opinion in December 2006 directing the issuance of a peremptory writ of mandate to require the trial court to grant two of Barnett's requests that the court had previously denied.
Both Barnett and the People sought review of our decision in the Supreme Court. The court granted the People's petition but denied Barnett's. Numerous amicus curiae briefs were filed in support of both Barnett and the People. One of the amicus curiae that filed a brief in support of the People was the Criminal Justice Legal Foundation (the Foundation). The Foundation argued that section 1054.9 was "an amendment of the Criminal Discovery Statute[s] enacted by the People in Proposition 115," and "[b]ecause the bill enacting section 1054.9 did not pass the Legislature by the two-thirds vote required for such an amendment, the section is not valid."
*30 Without reaching the issues raised by the People's petition for review, the Supreme Court transferred the matter back to us "with directions to establish a briefing schedule and then consider and decide the issues raised in the [Foundation's] brief . . . and [Barnett]'s answer to that brief." We established a briefing schedule in accordance with the Supreme Court's directive and have received briefs from the People and Barnett. We did not solicit further briefing from the Foundation, as the Foundation had thoroughly briefed the issue in its amicus curiae brief in the Supreme Court.

DISCUSSION

I

Section 1054.9 Is Not an Amendment to the Criminal Discovery Statutes Enacted As Part of Proposition 115

On June 5, 1990, the voters adopted an initiative measure entitled the "Crime Victims Justice Reform Act," designated on the ballot as Proposition 115. (Izazaga v. Superior Court (1991) 54 Cal.3d 356, 363 [285 Cal.Rptr. 231, 815 P.2d 304].) "Proposition 115 added both constitutional and statutory language authorizing reciprocal discovery in criminal cases. Section 30, subdivision (c), added to article I of the California Constitution (article I, section 30(c)) by Proposition 115, declares discovery to be `reciprocal' in criminal cases. (`In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the People through the initiative process.') [¶] Proposition 115 also added a new Penal Code chapter on discovery. (Pen. Code, § 1054 et seq. . . .)" (Izazaga, at p. 364.) Under the provisions of that new chapter, both the prosecuting attorney and the defense are required to make certain disclosures to the other side. (§§ 1054.1, 1054.3.)
An uncodified section of Proposition 115 (section 30) prescribes the requirements for amending any of the new statutes contained in the initiative measure: "The statutory provisions contained in this measure may not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors." (Stats. 1990, p. A-256, § 30.)
(1) In 2002, 12 years after the passage of Proposition 115, the California Legislature enacted section 1054.9 (Stats. 2002, ch. 1105, § 1), which, as we have noted, allows persons subject to a sentence of death or life in prison without the possibility of parole to file a motion for postconviction discovery to assist in seeking a writ of habeas corpus or an order vacating the judgment.
*31 (2) The Foundation contends the Legislature's enactment of section 1054.9 did not satisfy the requirements of section 30 of Proposition 115 because section 1054.9 did not pass by "two-thirds of the membership" of "each house" and did not become effective "only when approved by the electorate." The Foundation's count of the vote is correct.[4] Therefore, if by enacting section 1054.9 the Legislature can be deemed to have "amended" "[t]he statutory provisions contained in [Proposition 115]," then the Legislature acted beyond the powers granted by the voters. (See Proposition 103 Enforcement Project v. Quackenbush (1998) 64 Cal.App.4th 1473, 1483-1484 [76 Cal.Rptr.2d 342] ["When a statute enacted by the initiative process is involved, the Legislature may amend it only if the voters specifically gave the Legislature that power, and then only upon whatever conditions the voters attached to the Legislature's amendatory powers."].)
In this context, "An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision." (People v. Cooper (2002) 27 Cal.4th 38, 44 [115 Cal.Rptr.2d 219, 37 P.3d 403].) The Foundation contends that by enacting section 1054.9, the Legislature "amended" the criminal discovery statutes contained in Proposition 115. The People and Barnett both disagree, as do we.
(3) The Foundation first asserts that "[s]ection 1054.9 amended the Criminal Discovery Statute by adding a new section to that statute." It is true that "amending a statute includes adding sections to . . . that statute." (Huening v. Eu (1991) 231 Cal.App.3d 766, 777 [282 Cal.Rptr. 664].) But "in the case of an added code section, it is the effect of the added section and not its label or the representations in the enactment creating it which controls. Where a new section affects the application of the original statute or impliedly modifies its provisions, the new section is an amendment to the statute." (Ibid.) Thus, the mere fact that the Legislature added section 1054.9 to the Penal Code chapter on discovery that was enacted by the voters as part of Proposition 115 does not necessarily mean section 1054.9 "amended" "[t]he statutory provisions contained in th[e initiative] measure." To determine if the Legislature amended any of the statutory provisions contained in Proposition 115, we must look to the effect of section 1054.9 on the discovery chapter the voters enacted.
Critical to this analysis is determining, in the first instance, the intended reach of the discovery provisions in Proposition 115. The People argue that those provisions are "limited to pretrial discovery in criminal actions." In *32 their view, "Since section 1054.9 does not apply to the pretrial criminal proceedings subject to the Criminal Discovery Statute, it did not amend that statute and did not need to be adopted pursuant to a 2/3 vote of the Legislature."
The Foundation argues, on the other hand, that the intended reach of the discovery statutes in Proposition 115 is far more broad. The Foundation places particular emphasis on subdivision (a) of section 1054.5, which the Foundation describes as an "antievasion provision" or an "exclusivity provision."[5] The Foundation contends that this "exclusivity provision" shows the voters intended the discovery statutes in Proposition 115 to provide the sole avenue for obtaining discovery "in criminal cases," period. The Foundation then devotes some energy to arguing why the postconviction discovery allowed under section 1054.9 necessarily occurs "within the confines of a criminal defendant's underlying criminal case," so as to justify the conclusion that that discovery falls within "the exclusivity provision of section 1054.5, subdivision (a)."
(4) The Foundation's argument, however, overstates the significance of the "exclusivity provision." It is a fundamental rule of statutory interpretation that "we do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" (People v. Pieters (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].) Accordingly, in determining the intended reach of the discovery statutes enacted as part of Proposition 115, we cannot limit ourselves to subdivision (a) of section 1054.5. Rather, we must construe the entire discovery chapter as a whole to determine the intended reach of the statutory provisions in that chapter and whether section 1054.9 can be deemed to have affected the application of those provisions or impliedly modified them.
Various aspects of the discovery statutes the voters enacted as part of Proposition 115 convince us that, notwithstanding the "exclusivity provision" on which the Foundation relies, the intended reach of the statutory scheme is not as broad as the Foundation contends. First, portions of section 1054, which set forth the intended purposes of the discovery statutes the voters enacted, suggest that the intended reach of the statutes is limited to the discovery that precedes criminal trials. Indeed, the very first subdivision of *33 that section expressly provides that one of the purposes of the statutory scheme is to "promote the ascertainment of truth in trials by requiring timely pretrial discovery." (§ 1054, subd. (a), italics added.) Another subdivision provides that another purpose of the statutory scheme is to "save court time in trial and avoid the necessity for frequent interruptions and postponements." (Id., subd. (c), italics added.)
Perhaps even more to the point, section 1054.7 specifies that "[t]he disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred." (Italics added.) Additionally, the provisions in subdivisions (b) and (c) of section 1054.5, which govern the sanctions a court may impose on a party for not making the required disclosures, contemplate application before trial, inasmuch as the potential sanctions include "delaying or prohibiting the testimony of a witness or the presentation of real evidence," "continuance of the matter," "advis[ing] the jury of any failure or refusal to disclose and of any untimely disclosure," and (if required by the federal Constitution) "dismiss[ing] a charge." (§ 1054.5, subds. (b), (c).)
In summary, reading the statutory scheme as a whole, it appears to us the voters intended the discovery chapter they were enacting to address the discovery that occurs before a criminal trial. The Foundation points to nothing, other than the broad language of the "exclusivity provision" in subdivision (a) of section 1054.5, to suggest that the discovery statutes enacted as part of Proposition 115 are intended to reach beyond that, to encompass, and limit by silence, discovery that might be sought postconviction. As we have explained, however, the "exclusivity provision" cannot be read in isolation from the remainder of the statutory scheme.
We are further persuaded that the voters intended to address only pretrial discovery because, under case law existing at the time the measure was adopted, there would have been no reason for the initiative measure to address postconviction discovery. That is so because extant case law did not recognize any right to postconviction discovery. Specifically, in People v. Ainsworth (1990) 217 Cal.App.3d 247 [266 Cal.Rptr. 175]decided approximately six months before the passage of Proposition 115this court held that "a trial court, after a judgment of conviction is final" is "without jurisdiction to entertain" a defendant's "motion for discovery." (Ainsworth, at p. 249.) The court explained that "[t]here [wa]s no decisional or statutory authority for a trial court to entertain a postjudgment discovery motion which is unrelated to any proceeding then pending before the court. The reason for such lack of authority is simple. As with any other motion, a discovery motion is not an independent right or remedy. It is ancillary to an ongoing action or proceeding. After the judgment has become final, there is nothing pending in the trial court to which a discovery motion may attach." (Id. at p. 251.)
*34 (5) Ainsworth's recognition that there was no basis in California law for postconviction discovery in a criminal case confirms our conclusion that the discovery provisions of Proposition 115 are intended to address pretrial discovery only. Since the initiative measure did not speak to the issue of postconviction discovery, the enactment of section 1054.9which deals exclusively with postconviction discovery in capital and life-without-parole casescannot be deemed to have "amended" "the statutory provisions contained in" Proposition 115. For this reason, the Legislature did not act beyond the limitations on its power set forth in section 30 of the initiative measure, and the Foundation's challenge to the validity of section 1054.9 fails.

II

Barnett's Specific Discovery Requests
Having resolved the Foundation's challenge to the validity of section 1054.9, we turn to the issues raised by Barnett. Specifically at issue is the trial court's denial, in whole or in part, of 24 different discovery requests.[6] We will address each of those requests separately.

A

Home Addresses of Law Enforcement Witnesses
In February 1987, on a motion by Barnett to compel discovery, the trial court ordered the People to make available to Barnett "[t]he names, addresses and telephone numbers of all witnesses, prepared in a written list, who may be called to testify by the prosecution at any hearing or phase of the trial in this case, including but not limited to the guilt trial and penalty phase."
In his motion for discovery under section 1054.9, Barnett asserted that "[t]he state never provided such a list." Barnett claimed "[t]he district attorney did provide a list of potential witnesses . . ., but many of the witnesses who testified at trial are not on the list." Barnett requested "a complete and accurate witness list as was ordered in the trial court's discovery order."
The People asserted they had "no memory or documentation that such a specific list was given other than a partial subpoena list used for internal purposes." The People did, however, "attempt[] to reconstruct the missing *35 witness list with other information that existed in the People's files from the trial," but did not include in that list the home addresses of any law enforcement officers who testified. According to the People, the "home addresses of police . . . witnesses . . . were not reconstructed" because "a peace officer's home address is not to be disclosed."
The trial court ordered the People to provide the requested witness list, with the exception that "[n]o home addresses or telephone numbers of law enforcement officers are required to be disclosed."
Barnett contends the trial court erred in refusing to order the People to disclose the home addresses of the 15 law enforcement officers who testified at trial. He contends the home addresses of the law enforcement witnesses were relevant for impeachment purposes because "[a] credibility investigation includes an inquiry into the witnesses' reputation in their home communities" and denying him those addresses deprived him of various constitutional rights, including his Sixth Amendment right to confrontation.
In People v. Lewis (1982) 133 Cal.App.3d 317 [184 Cal.Rptr. 31], a defendant who was charged with possession of phencyclidine (PCP) for sale "brought a discovery motion seeking to obtain . . . the home addresses of the two arresting officers." (Id. at p. 319.) "The stated reason for the request was that, since appellant and the officers had different versions of the events leading up to appellant's arrest, and appellant's counsel had `reason to believe' that the officers' version was untrue, the officers' credibility was a crucial issue in the case and the defense should be allowed to investigate their reputations within their home communities for possible impeachment purposes." (Id. at p. 321.)
(6) The trial court denied the motion, and the appellate court affirmed that ruling. (People v. Lewis, supra, 133 Cal.App.3d at p. 321.) The appellate court explained that "[t]he constitutionally guaranteed right to confront witnesses is not without limitations. One such limitation is where the disclosure of certain information about the witness, such as his residence address, would endanger the witness or his family. In California, the Legislature has seen fit to include peace officers within this protected group by enacting Penal Code section 1328.5, which provides: `Whenever any peace officer is a witness before any court or magistrate in any criminal action or proceeding in connection with a matter regarding an event or transaction which he has perceived or investigated in the course of his duties, where his testimony would become a matter of public record, and where he is required to state the place of his residence, he need not state the place of his residence, but in lieu thereof, he may state his business address.' [¶] This case presents the type of situation visualized by the Legislature when it enacted section *36 1328.5. It is not uncommon for criminal defendants and law enforcement officers to relate different versions of the events leading up to the defendant's arrest. The Legislature recognized the potential danger to which law enforcement officers and their families could be exposed if the officers were required to disclose their home addresses during the course of testimony, making such information available to discontented defendants and their associates. [¶] . . . [D]isclosure of the officers' home addresses without their authorization is specifically foreclosed by section 1328.5." (People v. Lewis, supra, 133 Cal.App.3d at pp. 321-322, fns. omitted.)
Barnett contends we are "not bound by Lewis" because "Lewis did not discuss alternatives that would have provided the information to defense counsel, but not the defendant, such as a protective order" and because "Lewis was decided prior to the enactment of . . . Penal Code section 1054.2(a)(1) [in 1990, which] requires defense counsel to keep confidential addresses and telephone numbers of witnesses, and not provide that information to the defendant or any other person." Barnett further contends that section 1054.2, subdivision (a)(1), and section 1328.5 "can be harmonized to allow disclosure of peace officers' home addresses to defense counsel in discovery subject to § 1054.2(a)(1), as opposed to in open court." Accordingly Barnett concludes we have "discretion to grant [his] request" for the home addresses of the law enforcement witnesses.
Barnett's argument misapprehends both our role in this proceeding and the scope of discovery permitted by section 1054.9. First of all, it is not for us, as a reviewing court, to exercise our discretion in determining whether to grant or deny Barnett's request for discovery of particular materials. Our role is to review the ruling of the trial court, and (as Barnett admits elsewhere in his petition) an appellate court "generally review[s] a trial court's ruling on matters regarding discovery under an abuse of discretion standard." (People v. Ayala (2000) 23 Cal.4th 225, 299 [96 Cal.Rptr.2d 682, 1 P.3d 3].) Thus, the question for us is whether the trial court abused its discretion in denying Barnett's request for the home addresses of the law enforcement witnesses.
(7) This leads us to Barnett's misapprehension of the scope of discovery permitted by section 1054.9. The statute specifically allows a defendant to seek discovery of materials "to which [he] would have been entitled at time of trial." (§ 1054.9, subd. (b).) As our Supreme Court explained in Steele, while this language is broad enough to make section 1054.9 more than just "a `file reconstruction statute,'" at the same time the statutory language "does not allow `free-floating' discovery asking for virtually anything the prosecution possesses." (In re Steele, supra, 32 Cal.4th at pp. 693, 695.) Instead, section 1054.9 "provide[s] only limited discovery"; specifically, "the statute is limited to materials to which the defendant would have been entitled at the time of trial." (In re Steele, supra, 32 Cal.4th at p. 695.)
*37 (8) In Steele, the Supreme Court explained that those materials include "materials the prosecution provided at trial but that the defendant can show have since been lost,"[7] as well as "materials to which the defendant was actually entitled at time of trial, but did not receive." (In re Steele, supra, 32 Cal.4th at p. 695.) The court further explained that this latter category of materials could be further broken down into three subcategories: (1) "specific materials that the defendant can show the prosecution should have provided (but did not provide) at the time of trial because they came within the scope of a discovery order the trial court actually issued at time of trial or a statutory duty to provide discovery" "or the constitutional duty to disclose exculpatory evidence"; (2) "materials the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them"; and (3) "materials that the prosecution would have been obligated to provide had there been a specific defense request at trial, but was not actually obligated to provide because no such request was made."[8] (Id. at pp. 695, 697.)
With this understanding of what materials are discoverable under section 1054.9, the question for us is whether the trial court abused its discretion in determining that the home addresses of the law enforcement witnesses did not fall within any of the foregoing categories of materials to which Barnett would have been entitled at time of trial. Of course, since it is Barnett's burden to demonstrate an abuse of discretion by the trial court (see Denham v. Superior Court (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]), it falls to him to convince us that the material he seeks is something to which he would have been entitled at trial.
Here, Barnett contended in the trial court that the home addresses of the law enforcement witnesses were category No. 2 materials because they came within the scope of the discovery order the trial court issued in February 1987. The trial court implicitly concluded that the home addresses did not fall within this category, and the question for us is whether the trial court abused its discretion in making that determination.
We find no abuse of discretion. It is not clear from the face of the discovery order that the trial court intended to require the prosecution to disclose the material Barnett sought. The order directed the prosecution to make available to Barnett "[t]he . . . addresses . . . of all witnesses . . . who may be called to testify by the prosecution." While the order was certainly broad enough to encompass any law enforcement witnesses, the reference to "addresses"unqualified by the word "home"makes it uncertain whether *38 the trial court intended to require the disclosure of the home addresses rather than the work addressesof any law enforcement witnesses.
Because we draw all presumptions in favor of the trial court's order (see Denham v. Superior Court, supra, 2 Cal.3d at p. 566), we presume that the trial court concluded disclosure of the home addresses of the law enforcement witnesses was not within the intended scope of the discovery order. This conclusion is reasonable for at least two reasons. First, because the judge ruling on the section 1054.9 motion was the same judge who issued the discovery order, he is the person most likely to know what the intended scope of the discovery order was. Second, at the time the trial court made the discovery order, Lewis had been the law for nearly five years. Lewis specifically held that "disclosure of the officers' home addresses without their authorization is specifically foreclosed by section 1328.5." (People v. Lewis, supra, 133 Cal.App.3d at p. 322.) Since the trial court was bound by Lewis (see Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), it is eminently reasonable to conclude that in ordering the disclosure of the "addresses" of all witnesses, the trial court did not intend to require the disclosure of the home addresses of those witnesses who were law enforcement officers, because Lewis prohibited the court from making such an order.
Accordingly, the trial court did not abuse its discretion in determining the home addresses of the law enforcement witnesses were not within the scope of the discovery order and therefore were not material to which Barnett would have been entitled at time of trial. To the extent Barnett asks us to determine whether Lewis was wrongly decided, or to revisit Lewis in light of the enactment of section 1054.2, we have no power to do so in this proceeding. As Barnett admits elsewhere in his petition, "[t]he law in effect at the time of his pre-trial and trial proceedings governs this Court's determination of what Mr. Barnett was entitled to receive in discovery." In 1987, Lewis was the law (and it remains the law today). Under Lewis, Barnett was not entitled to the home addresses of the law enforcement witnesses. Therefore, he is not entitled to that material now on a motion under section 1054.9, and thus the trial court did not abuse its discretion in denying this aspect of his motion.

B

Original Notes By Out-of-state Law Enforcement Officers
In its February 1987 discovery order, the trial court granted Barnett's request for "[a]ll original notes taken by any police officer relating to the interview of any witness to be called to testify against the defendant."
*39 In his motion for discovery under section 1054.9, Barnett asserted that "[n]o original notes of any witness interview were provided in discovery." Accordingly, Barnett requested "discovery of all notes taken by any law enforcement officer relating to the interview of any witness." (We will sometimes refer to this request as discovery item No. 6.)
In their informal response to this request, the district attorney (Michael Ramsey) and the chief investigator for the district attorney's office (Tony Koester) "reviewed all of the files in [their] possession relating to the Barnett case and . . . discovered a number of sheets of notes which appear[ed] to be interview notes of witnesses." The People provided these notes to Barnett.
Barnett asserted that this response was "insufficient" because the People had "made no representation that they ha[d] asked [14 in-state law enforcement] officers [who were involved in witness interviews] for any original notes." Barnett asked the court to order the People to contact these officers "to ascertain whether any officer maintained original notes of the interviews in question." Barnett also asked the court to order the People to contact, for the same purpose, 22 out-of-state law enforcement officers who conducted interviews of witnesses who testified at trial.[9]
In their formal response, the People asserted that "[n]o notes of investigative officers were ever part of the discovery shared with trial defense counsel because none existed nor was there a duty to preserve." The People then clarified that "the `prosecution team' never had those notes" and argued that they should not have "to go on an expedition to hunt for other agencies' officers' notes . . . that may have been created during the investigations of the petitioner's other decades' old crimes."
(9) At the outset of its order on the section 1054.9 motion, the trial court made a ruling about which law enforcement agencies qualified as "law enforcement authorities" for purposes of section 1054.9 under the Supreme Court's decision in Steele, Recall that under subdivision (b) of the statute, the "discovery materials" to which the People must provide the defendant access are limited to "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." In Steele, the Supreme Court explained that the term "law enforcement authorities" did "not extend to all law enforcement authorities everywhere in the world but . . . only to law enforcement authorities who were involved in the investigation or prosecution of the case." (In re Steele, supra, 32 Cal.4th at p. 696.)
*40 The trial court here extrapolated from the Supreme Court's language that the term "law enforcement authorities" included "any law enforcement agency involved in the investigation of any criminal conduct, be it a charged or uncharged crime that was presented against Mr. Barnett in the guilt phase or as an aggravating factor in the penalty phase of the case." The court referred to this ruling as "Point One."
Subsequently, in ruling on Barnett's motion for police notes of witness interviews (discovery item No. 6), the court ordered the People "to contact the agencies listed that meet the criterion recited in Point One, to ascertain if their case file or agency records currently contain any of the requested materials." In making this order, however, the court limited its ruling to the 14 in-state law enforcement officers Barnett had identified and did not include the 22 out-of-state officers.[10]
Barnett contends the trial court's refusal to order the production of interview notes from the out-of-state law enforcement officers "is contrary to Steele" because those officers "all were involved in the investigation and prosecution of the case against him." The People offer three responses to this argument, which we will address in turn.

1

Law Enforcement Authorities
We begin with the People's argument that "Barnett has interpreted the term `law enforcement' in section 1054.9 much too broadly." According to the *41 People, law enforcement agencies are "involved in the investigation and prosecution of the case" within the meaning of Steele only if those agencies can be deemed "part of the prosecution team at trial," only if they were "involved in the investigation and prosecution of the capital murder charged in this case," and only if they "work[ed] for or acted as an agency of the prosecutor in this case." The People further contend that "[j]ust because a law enforcement agency provides information about earlier criminal conduct of a defendant, unrelated to the charged offense that is the basis for the current trial, does not render that agency part of the prosecution team."
We believe it is not Barnett who has interpreted the statute too broadly, but the People who have interpreted it too narrowly. Barnett asserted in support of his motion that the 22 out-of-state law enforcement officers "conducted interviews of witnesses who testified at trial," and the People did not (and do not) dispute that assertion. Elsewhere in his moving papers, Barnett asserted that the People had provided in the original trial discovery the reports of those (and other) interviews; thus, it is apparent that the People obtained the reports of the interviews from the out-of-state law enforcement agencies for the purpose of preparing the capital case against Barnett.
(10) The question, then, is whether a law enforcement agency that provides a report relating to previous criminal conduct by a defendant charged with a capital offense can be deemed to have been "involved in the investigation or prosecution of the case" against the defendant, such that materials in the possession of that agency are subject to discovery under section 1054.9. We conclude the answer to that question is "yes."
In Steele, the Supreme Court stated that the law enforcement agencies that are excluded from the reach of section 1054.9 are those "that were not involved in investigating or preparing the case against the defendant." (In re Steele, supra, 32 Cal.4th at p. 696.) A capital case like this frequently encompasses investigation and proof of prior felony convictions the defendant has suffered because the jury may consider such convictions in determining whether to impose the death penalty or life without the possibility of parole. (People v. Gurule (2002) 28 Cal.4th 557, 636 [123 Cal.Rptr.2d 345, 51 P.3d 224]; § 190.3, subd. (c).) Thus, the investigation of prior felony convictions, and preparation of the evidence necessary to prove those convictions, is a standard part of the prosecution of a capital case. To the extent the out-of-state law enforcement agencies here provided the People, during their preparation of the capital case against Barnett, with reports of his prior criminal conduct that resulted in felony convictions, those agencies were without question "involved in the investigating [and] preparing of the case against" Barnett. That their involvement may have been limited to providing reports the People requested from them does not change the fact that they were "involved."
*42 Citing Moon v. Head (11th Cir. 2002) 285 F.3d 1301, the People argue that a law enforcement agency that merely provides information about earlier criminal conduct "does not render that agency part of the prosecution team." The implied point of this argument is that a law enforcement agency must be "part of the prosecution team" in order to be deemed "involved in the investigation or prosecution of the case" within the meaning of Steele. We disagree.
This argument arises from that part of Steele in which our Supreme Court concluded that limiting the term "law enforcement authorities" in section 1054.9 to agencies "involved in the investigation or prosecution of the case" was "consistent with the scope of the prosecution's constitutional duty to disclose exculpatory information." (In re Steele, supra, 32 Cal.4th at p. 696.) According to the court, under case law from the United States Supreme Court, "the prosecution is responsible not only for evidence in its own files but also for information possessed by others acting on the government's behalf that were gathered in connection with the investigation." (Id. at p. 697.) Thus, by interpreting the term "law enforcement authorities" in section 1054.9 to mean agencies "involved in the investigation or prosecution of the case," our Supreme Court sought to establish parity between the prosecution's constitutional duty to disclose exculpatory information and the availability of discovery under section 1054.9.
In Moon, a case that involved the constitutional duty to disclose exculpatory information, the Eleventh Circuit held that that duty did not extend to information in the possession of an out-of-state law enforcement agency because that agency was not part of the "prosecution team." (Moon v. Head, supra, 285 F.3d at pp. 1309-1310.) Relying on Moon, and the parity our Supreme Court established in Steele, the People here reason that because the out-of-state law enforcement agencies at issue here were not part of the "prosecution team" for purposes of the constitutional duty to disclose exculpatory information, they likewise do not qualify as "law enforcement authorities" within the meaning of section 1054.9.
The People's reliance on Moon is misplaced. Unlike the Eleventh Circuit, California courts do not interpret the constitutional duty to disclose exculpatory information as limited to information in the actual possession of the "prosecution team." Instead, as explained in People v. Superior Court (Barrett) (2000) 80 Cal.App.4th 1305 [96 Cal.Rptr.2d 264] (which our Supreme Court cited with approval in In re Steele, supra, 32 Cal.4th at p. 697), "A prosecutor's duty under Brady [v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]] to disclose material exculpatory evidence extends to evidence the prosecutoror the prosecution teamknowingly possesses or has the right to possess. . . . In Kyles v. Whitley (1995) 514 U.S. 419, 437-438 *43 [115 S.Ct. 1555, 1567, 131 L.Ed.2d 490], the Supreme Court held that a prosecutor has a duty to learn of favorable evidence known to other prosecutorial and investigative agencies acting on the prosecution's behalf, including police agencies. The scope of the prosecutorial duty to disclose encompasses exculpatory evidence possessed by investigative agencies to which the prosecutor has reasonable access. [Citation.] [¶] A prosecutor has a duty to search for and disclose exculpatory evidence if the evidence is possessed by a person or agency that has been used by the prosecutor or the investigating agency to assist the prosecution or the investigating agency in its work. The important determinant is whether the person or agency has been `acting on the government's behalf' [citation] or `assisting the government's case.' [Citation.] [¶] Conversely, a prosecutor does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor does not have the duty to search for or to disclose such material." (People v. Superior Court (Barrett), supra, 80 Cal.App.4th at pp. 1314-1315.)
(11) Here, even if the out-of-state law enforcement agencies were not part of the "prosecution team," the People used those agencies to assist in their prosecution of the capital case against Barnett. Accordingly, the People had constructive possession of information possessed by those agencies, and the People's constitutional duty to disclose exculpatory information extended to information in the possession of those agencies. It follows then that those agencies were "involved in the investigation or prosecution of the case" against Barnett within the meaning of Steele. Consequently, the People cannot avoid their duty of disclosure under section 1054.9 by claiming otherwise.

2

Actual Existence of Discovery Materials
This leads us to the People's next argument in defense of the trial court's denial of Barnett's request for discovery of interview notes from the out-of-state law enforcement officers. The People argue that "Barnett has not made the necessary showing that he was unsuccessful in obtaining these materials, to the extent they exist, from trial counsel." The People concede that "Barnett exercised good faith efforts to obtain discovery material from trial counsel. Indeed, the record indicates that Barnett received trial counsel's entire file." Nevertheless, the People contend "Barnett has never made the necessary showing that his efforts at obtaining discovery materials were `unsuccessful.' To make such a showing, Barnett must establish that some discovery *44 materials actually exist beyond those obtained from trial counsel. Unless additional discovery materials are shown to exist, there is no basis to conclude that Barnett was unsuccessful in obtaining the discovery materials defined by section 1054.9."
(12) We rejected this same argument in People v. Superior Court (Maury) (2006) 145 Cal.App.4th 473, 479-486 [51 Cal.Rptr.3d 670]. As we concluded there, "in moving for discovery under section 1054.9, the defendant does not have to prove the actual existence (or a good faith belief in the actual existence) of discovery materials in the possession of the prosecution and/or the relevant law enforcement authorities as a prerequisite to obtaining an order for discovery under the statute." (Maury, at p. 485.) Accordingly, we need not address this argument further.[11]

3

Materials in Barnett's Possession
The People's final argument in defense of the trial court's denial of Barnett's request for discovery of interview notes from the out-of-state law enforcement officers is that "Barnett has not indicated what materials in this category, if any, he currently possesses." According to the People, because section 1054.9 "covers only materials to which `defendant would have been entitled at time of trial' but does not currently possess" (In re Steele, supra, 32 Cal.4th at p. 695), "in requesting materials pursuant to section 1054.9, a petitioner must show that the requested materials are not in his or her possession."
Barnett complains that "[t]his argument was not made below, and should not be heard here." Barnett is mistaken. The People offered this very same argument in their response to Barnett's motion in the trial court.
On the merits, Barnett contends this argument fails because "it is unsupported in the statute and such a rule would violate due process and the work product privilege." He also contends that he "did identify which trial discovery documents were in trial counsel's files."
(13) We agree with Barnett that the requirement the People advocate is not supported by the language of the statute, and thus we do not reach the issues of due process and work product. Section 1054.9 requires nothing *45 more than the showing of good faith, but unsuccessful, efforts to obtain the materials from trial counsel before moving for a discovery order under the statute. Such a showing can be made in several ways without creating an inventory of every single document or other item the defendant possesses already. In Steele, the defendant provided a declaration from his current attorney attesting that he had reviewed trial counsel's file and interviewed trial counsel and ascertained that the materials sought in the motion were not provided to trial counsel. (In re Steele, supra, 32 Cal.4th at p. 689.) Here, Barnett's motion attested to the transfer of trial counsel's entire trial file through several attorneys to his present attorneys and identified the numbered discovery pages in trial counsel's file that were missing or illegible.[12] Since the People provided the numbered discovery in the first place, they could determine what documents Barnett obtained from his trial counsel and which of those documents he now did not have. They were entitled to nothing more.[13]

4

Conclusion
For the reasons set forth above, we conclude the trial court abused its discretion when it denied Barnett's request for any original notes taken by the 22 out-of-state law enforcement officers who conducted interviews of witnesses who testified at trial (as identified in Barnett's second brief regarding discovery). Accordingly, we will grant this aspect of Barnett's petition and order the issuance of a writ of mandate directing the trial court to correct this error.

C

Criminal Records and Charges
In its February 1987 discovery order, the trial court granted Barnett's requests for "[t]he criminal record of all witnesses who may be called to testify at the trial in this case" and for "all agreements, promises, threats, inducements, offers of reward or immunity, witness fees, transportation assistance, assistance to members of the witness' family or to associates of *46 the witness, or affirmative representations, whether written or oral, made or implied to such persons or to their attorneys, executed or not, in an effort to obtain information or testimony as to the investigation and/or prosecution of the offenses charged in the information." The court, however, did not grant Barnett's request for discovery of "all pending criminal charges against [all witnesses who may be called to testify at trial in this case] anywhere in the State of California, all information regarding the current parole and/or probation status of such persons, and all arrests, criminal charges, ongoing criminal investigations, or actions pending anywhere in the State of California since the date of the alleged offense charged in the Information." Apparently, the court limited this request to only Barnett and his alleged coparticipant.
In his motion for discovery under section 1054.9, Barnett asserted that the prosecution failed to comply or did not fully comply with the two requests the trial court granted. Barnett asserted that because the prosecution did not provide the complete criminal record for all prosecution witnesses, he "cannot say whether other witnesses had charges pending against them or were otherwise under the control of the court or probation office when they testified." He also argued that the trial court had erroneously denied his request for discovery of the pending charges against, and parole and/or probation status of, the prosecution's witnesses. Accordingly, Barnett requested "any records indicating that charges were pending or contemplated against any State witness prior to their testimony against Mr. Barnett and for a period of one year after his sentencing on November 30, 1988." He also requested "the complete criminal record of all the State's witnesses, including arrests, felony and misdemeanor convictions, ongoing criminal investigations, probation and/or parole status, and actions pending against each witness within and without California."
In their informal response to this request, the People did not provide any of the requested information, asserting the request was "[t]oo broad and factually impossible to determine."
Barnett contended "the prosecution was obliged to disclose the information no matter how burdensome it may have been to compile" because the information "could have been used to impeach the State's witnesses."
In their formal response, the People stood by their assertion that the request was "over broad" and contended the trial court had recognized as much "when it limited a similar pre-trial request to only the petitioner and [his] co-participant."
In ruling on this request, the trial court first noted that it had already ordered discovery of "[t]he discoverable items herein" in ruling on an earlier *47 request. (Specifically, the trial court had granted Barnett's request for any agreements, promises, inducements, or offers of immunity.) The trial court then ruled that "[t]he balance of the material listed herein does not fall within the Steele criteria, and the request for discovery in those areas is denied."
Barnett contends the trial court's refusal to order discovery of this material was "contrary to Steele" because "[e]verything requested is information that could have been used to impeach the State's witnesses" and is therefore within the prosecution's constitutional obligation to disclose evidence favorable to the defendant under Brady.
(14) In their response to this argument, the People contend "this request is beyond the scope of section 1054.9 in that it seeks materials or information that post-date the trial." To the extent Barnett sought "any records indicating that charges were pending or contemplated against any State witness . . . for a period of one year after [Barnett's] sentencing on November 30, 1988," we agree. By its very terms, section 1054.9 covers only materials to which the defendant "would have been entitled at time of trial." (§ 1054.9, subd. (b), italics added.) Thus, Barnett's request for records relating to charges pending or contemplated after his trial is beyond the scope of the statute.
The fact that (as Barnett notes) "exculpatory evidence that comes to light after trial must be disclosed" under Brady does not change this result. Whether the People had a posttrial duty under Brady to disclose to Barnett criminal charges that were pending or contemplated against one of their witnesses within a year after Barnett was sentenced has nothing to do with whether the People can be ordered to produce such information under section 1054.9. Because it is limited to materials to which the defendant would have been entitled at time of trial, that statute simply does not provide a vehicle for a defendant to enforce any posttrial Brady obligations the People may have.
Other than Barnett's request for information postdating the trial, it does not appear to us that the People are offering any argument against the requests now at issue that we have not already rejected. Nonetheless, because we presume the trial court's order is correct and the burden is on Barnett to establish an abuse of discretion (see Denham v. Superior Court, supra, 2 Cal.3d at p. 566), Barnett still bears the burden of persuading us that his requests are proper under section 1054.9 and Steele. To carry this burden, Barnett must persuade us the materials he is seeking fall within one of the Steele categoriesthat is, are materials to which he would have been entitled at time of trialand that the trial court abused its discretion in concluding otherwise. He has failed to do so.
*48 As noted above, Barnett contends "[e]verything requested is information that could have been used to impeach the State's witnesses" and therefore falls within the prosecution's duty to disclose under Brady. In other words, Barnett contends they are category No. 2 materialsi.e., materials "the prosecution should have provided at time of trial because they came within . . . the constitutional duty to disclose exculpatory evidence." (In re Steele, supra, 32 Cal.4th at p. 697.) Thus, the question is this: Did the prosecution have a duty under Brady to disclose to Barnett: "any records indicating that charges were pending or contemplated against any State witness prior to their testimony against Mr. Barnett" and "the complete criminal record of all the State's witnesses, including arrests, felony and misdemeanor convictions, ongoing criminal investigations, probation and/or parole status, and actions pending against each witness within and without California"?[14] To answer that question, we must examine the scope of the prosecution's duty under Brady.
(15) "The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant. [Citation.] But such evidence must be both favorable to the defendant and material on either guilt or punishment. [Citation.] [¶] Evidence is `favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [Citation.] [¶] Evidence is `material' `only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.'" (In re Sassounian (1995) 9 Cal.4th 535, 543-544 [37 Cal.Rptr.2d 446, 887 P.2d 527], fn. omitted.)
In determining the materiality of evidence that was not disclosed, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression `undermines confidence in the outcome of the trial.'" (Kyles v. Whitley, supra, 514 U.S. at *49 p. 434 [131 L.Ed.2d at p. 506].) Furthermore, the materiality of the evidence is "considered collectively, not item by item." (Id. at p. 436 [131 L.Ed.2d at p. 507].)
(16) Under the foregoing principles, the fact that evidence could have been used for impeachment purposes alone does not mean that evidence is subject to the Brady duty of disclosure and therefore something to which the defendant is entitled under section 1054.9. Showing that evidence could have been used for impeachment purposes satisfies the requirement that the evidence must be "favorable" to the defendant; however, to fall within the constitutional duty of disclosure, the evidence must also be "material"that is, it must be of such significance that considered collectively with any other evidence favorable to the defendant, its absence undermines confidence in the outcome of the trial.[15]
Here, Barnett has made no effort to show that the materials he is seeking meet this materiality standard, and this omission is fatal. Steele makes clear that, to obtain a discovery order under section 1054.9, the defendant bears the burden of showing that the materials he is requesting are materials to which he would have been entitled at time of trial. (See In re Steele, supra, 32 Cal.4th at p. 688 ["section 1054.9's discovery . . . is limited to, specific materials . . . that the defendant can show fall into any of these categories. . ."]; see also id. at p. 697.) Barnett has not carried that burden here because he has not shown that the materials he is seeking were subject to disclosure under Brady.[16]
*50 The cases Barnett cites to support his discovery request are of no assistance to him. In People v. Coyer (1983) 142 Cal.App.3d 839 [191 Cal.Rptr. 376], the appellate court concluded that a defendant was "entitled to discovery of criminal charges currently pending against prosecution witnesses anywhere in the state." (Id. at p. 842.) Coyer, however, did not address the constitutional duty of disclosure; instead, Coyer was decided under the case law that governed criminal discovery in California before 1990. Thus, Coyer does not support Barnett's claim to these materials under Brady.
Of course, because the trial in this case occurred in 1988, discovery at time of trial was governed by the pre-1990 case law, and it could be argued that under Coyer Barnett was entitled to the materials he now seeks. That argument does not assist Barnett, however, because he specifically asked the trial court for discovery of these materials at time of trial, but the trial court denied his requests. For this reason, Barnett cannot now claim he was entitled to these materials at time of trial because they fell within the scope of the February 1987 discovery order; they plainly did not. Moreover, section 1054.9 does not provide a vehicle for Barnett to make a belated challenge to that discovery order. If Barnett believed the trial court wrongfully denied his request for discovery of these materials at time of trial, he needed to raise that issue on appeal from his conviction. Having failed to do so, Barnett is now precluded from contending he was entitled to these materials at time of trial unless he demonstrates they were subject to the constitutional duty of disclosure.
Barnett's reliance on People v. Santos (1994) 30 Cal.App.4th 169 [35 Cal.Rptr.2d 719] is likewise misplaced. In Santos, the appellate court concluded that "the due process clause of the federal Constitution compels disclosure of misdemeanor convictions of witnesses when requested by defendant." (Id. at p. 173.) In reaching that conclusion, however, the court failed to note or apply the requirement (later explained in Sassounian) that to be subject to the constitutional duty of disclosure, evidence must be "material," such that there is a reasonable probability the result of the trial would have been different if the evidence had been disclosed. Thus, Santos is of no help either.
In People v. Hayes (1992) 3 Cal.App.4th 1238 [5 Cal.Rptr.2d 105], the appellate court determined that the trial court erred in denying a discovery request for "`the alleged victim's criminal convictions, pending charges, status of being on probation, any acts of victim's dishonesty and, any prior false reports of sex offenses by the victim'" because such evidence was within the prosecution's constitutional duty of disclosure. (Id. at pp. 1243-1245.) Upon doing so, however, the appellate court remanded the case to the trial court for that court to determine if the evidence (assuming it *51 existed) was material. (Id. at p. 1245.) The flaw in this approach is that, as previously shown, evidence is not within the prosecution's constitutional duty of disclosure unless it is both favorable and material. In essence, the appellate court in Hayes found a Brady violation without determining whether the evidence at issue was material. That was erroneous, and therefore Hayes is of no use to us.
In the remaining three federal cases and two state cases Barnett cites, the appellate courts both recognized and applied the materiality element of the constitutional duty of disclosure. (See Crivens v. Roth (7th Cir. 1999) 172 F.3d 991, 998 [finding a Brady violation where the prosecution failed to disclose the criminal record of a witness whose "testimony form[ed] the heart of the state's case against" the defendant]; U.S. v. Steinberg (9th Cir. 1996) 99 F.3d 1486, 1492 [finding a Brady violation because the prosecution failed to disclose evidence of ongoing criminal activity by a "key witness in the trial"], disapproved on other grounds in U.S. v. Foster (9th Cir. 1999) 165 F.3d 689, 692, fn. 5; United States v. Auten (5th Cir. 1980) 632 F.2d 478, 482 [finding a Brady violation where the prosecution failed to disclose additional convictions of a witness whose testimony was "of substantial weight"]; People v. Little (1997) 59 Cal.App.4th 426, 429-435 [68 Cal.Rptr.2d 907] [concluding the prosecution had a duty to disclose the felony conviction of a witness whom the trial court characterized as a "`critical witness'" whose "`credibility was very, very important in this case'"]; People v. Martinez (2002) 103 Cal.App.4th 1071, 1081-1082 [127 Cal.Rptr.2d 305] [finding a Brady violation where the prosecution failed to disclose pending charges against a "pivotal witness"].) These cases do not help Barnett because he has made no showing of materiality here.
(17) At first glance, there may appear to be a conceptual problem in requiring a defendant to demonstrate the materiality of evidence that may not even exist, but that difficulty is illusory. If the defendant seeks the discovery of materials under section 1054.9 on the ground he was entitled to them at time of trial because they fell within the prosecution's constitutional duty of disclosure, he must simply describe those materials with sufficient particularity to explain whyassuming they existthey would have been both favorable and material and thus subject to disclosure. It will then be for the trial court to decide, in the exercise of its discretion, whether the defendant has shown both the favorableness and the materiality of the evidence the defendant seeks. If the defendant cannot describe evidence that would be both favorable and material, then he has not shown that what he is seeking qualifies as "discovery materials" under section 1054.9, that is, something to *52 which he would have been entitled at time of trial.[17] If, however, the trial court concludes the defendant has met his burden of showing favorableness and materiality and thus shown a potential Brady violation, the defendant is entitled to a discovery order for that evidence under section 1054.9. Of course, if the requested material does not exist or is not in the possession of the prosecution or the relevant law enforcement officials, then the People need simply say so in responding to the discovery order.
Here, Barnett has never made any effort to explain why "any records indicating that charges were pending or contemplated against any State witness prior to their testimony against Mr. Barnett" and "the complete criminal record of all the State's witnesses, including arrests, felony and misdemeanor convictions, ongoing criminal investigations, probation and/or parole status, and actions pending against each witness within and without California" were material, such that the evidence, if it exists, would (even considered collectively) reasonably undermine confidence in the outcome of the trial.
Part of the problem is the breadth of Barnett's discovery request. It is so broad it would encompass the criminal records of witnesses whose testimony was of little or no value in securing his conviction. Certainly such evidence, even considered collectively with other evidence favorable to Barnett, is not "material" so as to fall within the constitutional duty of disclosure and thus is not evidence to which Barnett was entitled at time of trial under Brady.
Moreover, even as to witnesses who might have been "key" or "pivotal," any additional impeachment evidence that might have been available, such as convictions or pending charges, would not necessarily have been material. It is possible that an extensive amount of impeachment materials were already offered for such witnesses (assuming there were any) and that the presence of some additional impeachment evidence might not have made any difference. We cannot determine if that is the case, however, because Barnett has made no attempt to address the materiality element of the constitutional duty of disclosure.[18]
Barnett contends it is "contrary to United States Supreme Court precedent" to "shift[] the burden of establishing [the] materiality of [the] requested *53 discovery from the prosecutor to [him]." He asserts that because only "[t]he prosecutor knows what [evidence] he possesses that is favorable," it is the prosecutor's duty to determine whether that evidence, considered collectively, is material. Thus, in Barnett's view, a defendant's only obligation in seeking Brady materials as part of a discovery motion under section 1054.9 is to "describe broad categories of evidence that would be favorable, if such existed." The trial court must then "grant the discovery request," at which time "[t]he burden . . . will shift to the prosecutor to assess the materiality of all the favorable evidence."
We disagree that this approach is mandated by federal constitutional law. It is true that, in the context of pretrial discovery, "the prosecution, which alone can know what is undisclosed, [is] assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of `reasonable probability' is reached." (Kyles v. Whitley, supra, 514 U.S. at p. 437 [131 L.Ed.2d at p. 508].) But we are not dealing here with pretrial discovery; rather, we are dealing with a motion for postconviction discovery, which is provided for and governed by California law. Nothing in the Brady line of cases requires us to place the burden of showing materiality on the prosecution in connection with a motion for postconviction discovery under state law. Indeed, such a motion involves federal constitutional principles under the Brady line of cases only indirectly. As we have explained, section 1054.9 allows a defendant to seek discovery of material to which he would have been entitled at time of trial, which includes material that was subject to the prosecutor's constitutional duty of disclosure under Brady. But we have also explained Steele makes clear that in making a motion for discovery under section 1054.9, it is the defendant who bears the burden of showing he would have been entitled at time of trial to the materials he is requesting. This necessarily means that when the defendant argues he was entitled to the materials at time of trial pursuant to the prosecutor's constitutional duty of disclosure, he bears the burden of showing both the favorableness and materiality of the evidence he seeks. If the defendant fails to show the evidence he is seeking is material, then he has failed to show he was entitled to that evidence at time of trial, which is a foundational requirement to discovery under section 1054.9.
Barnett also argues that requiring him to show materiality is contrary to Steele because Steele made clear that defendants "may use [section] 1054.9 as an investigative tool," "before they file a [habeas corpus] petition." In Barnett's view, requiring him to show the materiality of the evidence he is seeking "returns [defendants like him] to the . . . standard of discovery that the Legislature intended to modify" when it enacted section 1054.9.
We disagree. In Steele, the Supreme Court explained that section 1054.9 was intended to modify the rule from People v. Gonzalez (1990) 51 Cal.3d *54 1179, 1257, 1261 [275 Cal.Rptr. 729, 800 P.2d 1159], which was "that the defendant had to state a prima facie case for [habeas corpus] relief before he may receive discovery." (In re Steele, supra, 32 Cal.4th at p. 691.) Requiring the defendant to show the materiality of evidence he is requesting under section 1054.9 does not, as Barnett contends, resurrect the Gonzalez rule and require him to "prove his claim without discovery in order to get discovery." Under Gonzalez, the defendant had to be able to set forth in a habeas corpus petition, under penalty of perjury, "specific facts which, if true, would require issuance of the writ" before a cause or proceeding would even exist in which discovery could be sought. (People v. Gonzalez, supra, 51 Cal.3d at p. 1258.) Now, however, a defendant may simply file a motion for discovery under section 1054.9. Moreover, as we have explained, if the defendant seeks the discovery of materials on the ground he was entitled to them at time of trial because they fell within the prosecution's constitutional duty of disclosure, he must simply describe those materials with sufficient particularity to explain whyassuming they existthey would have been both favorable and material and thus subject to disclosure.
Under the present system, the defendant need not have already developed a theory of habeas corpus relief on which he can swear to the supporting facts under penalty of perjury. He must, however, at least have conceived of reasonably specific materials to which he would have been entitled at time of trial, which he can then describe in his motion for discovery under section 1054.9. While this does place a greater burden on him than Barnett might like, it is a burden compelled by section 1054.9 and our Supreme Court's decision in Steele.
Barnett also argues that requiring him to show the materiality of the evidence he seeks is inconsistent with this court's conclusion that he does not have to prove the actual existence of that evidence, because it places a burden on him that is "equally as daunting." Again, we disagree. Describing evidence that, if it exists, would be both favorable and material is far less difficult than proving the actual existence of such evidence. Indeed, Barnett illustrates how easy it is to imagine evidence that would be favorable and material when he hypothesizes the existence of a tape recording in which another person (Cantwell) confessed to the murder of which he was convicted.[19] The problem raised by this hypothetical is not the difficulty in imagining and describing such evidence, but rather the possibility that encouraging defendants and their habeas corpus attorneys to imagine such evidence will "turn[ section] 1054.9 discovery into a game."
*55 We must assume that in the exercise of their duties to their clients and to the courts, habeas corpus attorneys will not view discovery under section 1054.9 as a "game" and will not formulate discovery requests under that statute based on nothing more than pure imagination. But if a defendant and/or his attorney can imagine and describe materials to which the defendant would have been entitled at time of trial based on some plausible theory, then a request for such material would be proper under section 1054.9. Thus, for example, given the defense theory that Cantwell framed Barnett for Eggett's murder (which was already supported by the testimony of two witnesses), it would be appropriate for Barnett to request in a motion under section 1054.9 any materials tending to show that Cantwell was responsible for the murder. Such evidence is reasonably specific and, if it exists, would be favorable to Barnett. Moreover, Barnett would likely have little difficulty in persuading the court that the prosecution's failure to disclose further evidence of Cantwell's responsibility for the crime would tend to undermine confidence in Barnett's conviction. In any event, this showing of materiality would be far easier than proving any such evidence actually exists.
Thus, we stand by our conclusion that when a defendant seeks discovery under section 1054.9 on the theory that he would have been entitled to the requested materials at time of trial under Brady, the defendant bears the burden of establishing the materiality of the evidence he seeks.
We also stand by our conclusion that Barnett did not make the requisite showing here. In seeking relief from this court, it was Barnett's burden to demonstrate an abuse of discretion by the trial court (see Denham v. Superior Court, supra, 2 Cal.3d at p. 566); accordingly, it fell to Barnett to convince us that the materials he is seeking are materials to which he would have been entitled at trial. It is not our duty to search through Barnett's habeas corpus petition, which is thousands of pages long, to find his explanation of why the evidence he seeks to discover is material. (See Grant-Burton v. Covenant Care, Inc. (2002) 99 Cal.App.4th 1361, 1379 [122 Cal.Rptr.2d 204] [appellate court has no duty to search the record].) On the contrary, it is Barnett's duty to present a fully developed argument to us about why he is entitled to the relief he seeks, and any such argument must include a fully developed explanation of why he was entitled at time of trial to the materials he requested because those materials were both favorable and material under Brady. Having failed to offer such an explanation, Barnett has failed to show an abuse of discretion by the trial court in denying this discovery request under section 1054.9.

*56 D

Inducements
Barnett contends the trial court erred in denying his request for discovery of "any inducements offered or made to [six particular] State witnesses." As the People point out, the trial court noted that this request was subsumed in an earlier request for discovery of inducements offered to any witness, which the trial court granted. The trial court denied the subsequent request only "[t]o the extent th[e subsequent] discovery request seeks more than [the earlier request]."
(18) Barnett does not suggest that this request sought anything more than the earlier request, which the trial court granted. Indeed, Barnett fails to address the overlap between the two requests. Section 1054.9 does not give a defendant the right to have the court order duplicative discovery. Accordingly, Barnett has failed to show any abuse of discretion in the trial court's ruling.

E

Lies to Law Enforcement
In his motion under section 1054.9, Barnett contended he was "entitled to know whether any witness lied to law enforcement." In his initial brief, he asserted this constituted category No. 2 material under Steele.
In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. Further the prosecution has no duty to actively investigate the facts and circumstances of these activities for the benefit of the petitioner."
The trial court denied this request.
Barnett contends the trial court abused its discretion in denying this request because "[s]uch information is Brady material, and must be disclosed."
The People offer no response to Barnett's assertion that this request seeks Brady material. Instead, they argue that "[g]iven the district attorney's statement [that nothing exists as to this request beyond that already disclosed], the [trial] court did not abuse its discretion in denying a request for materials that do not exist or are not possessed by the relevant agencies."
Barnett complains that "[t]he District Attorney's statement that no responsive records exist was not made under oath, under penalty of perjury" and that "[t]he prosecutor's denial was not the reason the Superior Court denied this request."
*57 As to Barnett's latter point, "we review the correctness of the trial court's ruling, not the reasons underlying it." (People v. Koontz (2002) 27 Cal.4th 1041, 1075-1076, fn. 4 [119 Cal.Rptr.2d 859, 46 P.3d 335].) "A judgment or order correct in theory will be affirmed, even where the trial court's given reasoning is erroneous." (Punsly v. Ho (2003) 105 Cal.App.4th 102, 113 [129 Cal.Rptr.2d 89].) Thus, we are not concerned with the reason the trial court denied this discovery request, but only with whether the decision to deny it was correct. Consequently, the issue before us (at this point) is whether a trial court abuses its discretion in denying a motion for discovery under section 1054.9 when the People, in their unsworn opposition to the motion, assert that no documents responsive to the discovery request exist beyond those already provided.
(19) It could be argued that requiring a court to order the prosecution to provide the defendant access to materials the prosecution has already asserted do not exist would be an idle act. In construing section 1054.9, however, we must respect the statutory language. The statute provides that "on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall [with an exception not applicable here] order that the defendant be provided reasonable access to" the discovery materials. (§ 1054.9, subd. (a), italics added.) The statute does not allow the People to preempt a discovery order by asserting in an unsworn opposition to the defendant's motion that none of the documents the defendant seeks exist. Nor is it necessarily a meaningless act to require the People to assert their denial of the existence of any responsive document after the issuance of a court order. Particularly where the denial of existence of any further responsive documents is unsworn, the existence of a court order requiring the prosecution to provide access to discovery materials emphasizes the seriousness of the issue.
Moreover, there is an additional reason in this case to require the People to assert their denial of the existence of any responsive materials after the issuance of a discovery order. As previously explained, the trial court here ordered that, with respect to the requests it granted, "if there is no discovery materials or no further discovery materials to be provided beyond what has already been provided, then the [People] should so state in a written declaration to be provided petitioner-defendant on or before the discovery deadline. [¶] The declaration should state the factual basis for the conclusion, quote, nothing exists to be discovered as to this item of discovery, end quote; or, quote, nothing exists as to the discovery item beyond what has already been provided, end quote. [¶] The declaration should address what efforts were made to find the item or items of discovery, including what, if any, agencies or individuals were contacted and their responses."
*58 If we were to determine that Barnett's discovery request was otherwise proper under section 1054.9 and Steele, but that the People's unsworn denial of the existence of any further responsive documents was a sufficient basis for the trial court's denial of the request, then Barnett would be denied the information that the trial court ordered the People to give him with respect to other discovery requests the trial court granted.[20]
For these reasons, we conclude that the People's unsworn denial of the existence of any further responsive documents is not a valid basis for upholding the denial of Barnett's request for discovery of information that any witness lied to law enforcement.[21]
That leaves us with the question of whether the trial court abused its discretion in denying this request because the materials fall within the prosecution's duty of disclosure under Brady. We find no abuse of discretion because, as before, Barnett has failed to demonstrate the materiality of the evidence he seeks. Moreover, the three additional cases he now cites do not excuse his failure because each recognizes and applies the materiality element of the constitutional duty of disclosure. (See Carriger v. Stewart (9th Cir. 1997) 132 F.3d 463, 480 [finding a Brady violation where the prosecution failed to disclose the corrections file of its "star witness"]; U.S. v. Bernal-Obeso (9th Cir. 1993) 989 F.2d 331, 336 [concluding "a material lie by a critical informant-witness about his prior record would be exculpatory and thus discoverable Brady information which the government would be under a Constitutional duty to disclose"]; U.S. v. Brumel-Alvarez (9th Cir. 1992) 991 F.2d 1452, 1458 [concluding that "[e]vidence impeaching the testimony of a government witness falls within the Brady rule when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence"].)

F

Ongoing Criminal Activities
In his motion under section 1054.9, Barnett contended he was "entitled to know of any state witness's ongoing criminal activities." In his initial brief, he asserted this constituted category No. 2 material under Steele.
*59 In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. Further the prosecution has no duty to actively investigate the facts and circumstances of these activities for the benefit of the petitioner."
The trial court denied this request.
Barnett contends the trial court erred in denying this request because "a witness who is committing crimes has a motive to help law enforcement in order to avoid punishment for his own crimes." In essence, Barnett contends once more that the information he is seeking would have been relevant for impeachment purposes and was thus discoverable under Brady. The People do not offer any argument against this request that we have not already rejected. Once against, however, Barnett has failed to show the materiality of the evidence he seeks. Accordingly, he has again failed to show the trial court abused its discretion in denying his request.

G

Drug Use or Addiction
In his motion under section 1054.9, Barnett contended he was "entitled to disclosure of any information in the government's possession indicating that a witness was a drug addict or used drugs." In his initial brief, he asserted this constituted category No. 2 material under Steele because "[s]uch information is relevant to the witness's ability to perceive and recall events and also as impeachment material."
In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. Further the prosecution has no duty to actively investigate the facts and circumstances of these activities for the benefit of the petitioner."
The trial court denied this request.
Barnett contends the trial court erred in denying this request because "such evidence is impeaching, showing that the addict's testimony is inherently suspect and that the fact of addiction is probative of other motive for testifying." The People do not offer any argument against this request that we have not already rejected.
The two California cases Barnett cites on this point are inapposite. In People v. Melton (1988) 44 Cal.3d 713, 736-737 [244 Cal.Rptr. 867, 750 P.2d 741], the court concluded that "[a] witness's drug intoxication may indeed be *60 a basis for impeaching his credibility," but that conclusion related to a witness the defendant claimed was intoxicated at the time he was testifying. In People v. Rocha (1971) 3 Cal.3d 893, 901 [92 Cal.Rptr. 172, 479 P.2d 372], the court concluded "[e]vidence of consumption of narcotics is admissible for impeachment purposes if there is expert testimony substantiating the effects of such use," but that conclusion related to a witness (the defendant himself) who was allegedly under the influence of marijuana at the time of the crime. Neither of these cases stands for the proposition that evidence of a witness's drug use or addiction in general is relevant for impeachment purposes.
The federal cases on which Barnett relies provide some support for the proposition that when an informant witness is also a drug addict, the witness's drug addiction is relevant to his credibility. For example, in United States v. Kinnard (D.C. Cir. 1972) 150 U.S. App.D.C. 386 [465 F.2d 566, 570], the court stated that "a government informer's addiction to narcotic drugs and his indictment for narcotics violations . . . increase[s] the danger that he will color his testimony to place guilt on the defendant for his own benefit." These cases, however, do not support the broader proposition that any witness's drug addiction is relevant to the witness's credibility. In the absence of any other authority, we conclude that Barnett has failed to show that the materials he seeks would have been favorable to him; thus, we need not address his failure (once again) to demonstrate their materiality. Under these circumstances, the trial court did not abuse its discretion in denying this request.

H

Motive to Lie or Bias
In his motion under section 1054.9, Barnett contended he was "entitled to disclosure of any information in the government's hands regarding any of its witnesses' motives to lie or biases for the State or against Mr. Barnett." In his initial brief, he asserted this constituted category No. 2 material under Steele.
In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. Further the prosecution has no duty to actively investigate the facts and circumstances of these activities for the benefit of the petitioner."
The trial court denied this request.
Barnett contends the trial court abused its discretion in denying this request because "[s]uch evidence is quintessential impeachment material." The People do not offer any argument against this request that we have not already rejected.
*61 We agree with Barnett that materials reflecting any motive to lie or bias by the People's witnesses for the People or against Barnett would have been favorable to him, but he has again failed to make any showing of materiality. Accordingly, the trial court did not abuse its discretion in denying this request.

I

Records
In his motion under section 1054.9, Barnett contended he was entitled to the following records regarding all of the People's witnesses: probation records, juvenile records, mental health records, governmental records indicating drug use and/or addiction, and prison records. In his initial brief, he asserted these records constituted category No. 2 and/or category No. 4 material under Steele.
In their formal response, the People asserted they were not in possession of any probation reports that were in the hands of the court or the probation office and that "[t]he rest of the request is to items outside of the prosecution team's possession or knowledge."
The trial court denied this request.
Barnett contends "[t]he trial court's ruling is contrary to law because probation, juvenile, and mental health records may be used to impeach."[22] The People do not offer any argument against this request that we have not already rejected.
Barnett first relies on Davis v. Alaska (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105] for the proposition that he was entitled to discovery of the juvenile records of the People's witnesses. In People v. Hammon (1997) 15 Cal.4th 1117, 1124 [65 Cal.Rptr.2d 1, 938 P.2d 986], however, our Supreme Court explained that Davis v. Alaska did not involve discovery rights: "By its terms, the decision in Davis . . . involved a defendant's trial rights only: The court held a defendant could not be prevented at trial from cross-examining for bias a crucial witness for the prosecution, even though the question called for information made confidential by state law [i.e., the witness's juvenile probationary status]."
*62 Under Pennsylvania v. Ritchie (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989], however, juvenileand other potentially confidentialrecords in the possession of the prosecution may be subject to discovery because "the due process clause requires the `government' to give the accused all `material' exculpatory evidence `in its possession,' even where the evidence is otherwise subject to a state privacy privilege, at least where no clear state policy of `absolute' confidentiality exists." (People v. Webb (1993) 6 Cal.4th 494, 518 [24 Cal.Rptr.2d 779, 862 P.2d 779].) Again, however, Barnett has failed to demonstrate the materiality of the evidence he seeks, which is a prerequisite to demonstrating his entitlement to that evidence under Brady and section 1054.9. Accordingly, he has failed to show the trial court abused its discretion in denying this request.

J

Work Product in District Attorney's Files
In his motion under section 1054.9, Barnett requested the "Butte County District Attorney's files regarding [himself] and Thomas Burgess [his alleged coparticipant]." In his initial brief, he explained that this request was limited to documents "the State has not yet disclosed" and included "a request for documents that the District Attorney claims are work product"specifically, a file box that the district attorney had pointed out to Barnett's attorneys and told them he was not going to disclose. Barnett requested that the court order the People "to file a privilege log, describing each document withheld with sufficient specificity to enable [him] to argue that such document is not covered by the statutory work product protection and should be disclosed."
In their formal response, the People asserted that they had "disclosed all discoverable matters," but had "not discovered papers reflecting the prosecution's own impressions of witnesses, trial notes, and legal researchi.e., work product, not required to be disclosed."
The trial court denied this request.
Barnett contends the trial court's ruling was an abuse of discretion "because the District Attorney is not entitled to claim work product protection in these circumstances and because the trial court failed to examine any of the materials in camera for Brady material."
Barnett's first contentionthat the People are not entitled to claim work product protection in these circumstancesis premised on his belief that his "right to Brady material must overcome the work product protection." Barnett's belief is correct (see People v. Collie (1981) 30 Cal.3d 43, 59, fn. 12 *63 [177 Cal.Rptr. 458, 634 P.2d 534] [work-product doctrine "manifestly . . . cannot be invoked by the prosecution to preclude discovery by the defense of material evidence, or to lessen the state's obligation to reveal material evidence even in the absence of a request therefor"]); however, the assertion that the People are not entitled to claim work product protection is true only if, and to the extent, the documents the People have withheld actually include Brady material. It is because of the possibility that the documents withheld include Brady material that Barnett offers his second contentionthat the trial court was obliged to conduct an in camera review of the documents or at least require the People to provide a privilege log. In essence, Barnett wants the trial court to examine in camera, and/or the People to prepare a privilege log for, those documents in the district attorney's files regarding himself and Thomas Burgess that the district attorney contends are protected as work product, because some of those documents may contain Brady material.
The People assert that "the prosecution has the final word on what is disclosed pursuant to Brady and an in camera review of the prosecution's files is not constitutionally nor statutorily compelled." In support of this argument they cite Pennsylvania v. Ritchie, supra, 480 U.S. at page 59 [94 L.Ed.2d at pp. 58-59], in which the court stated that "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. . . . Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." (Fn. omitted.)
(20) This passage from Pennsylvania v. Ritchie is inapposite because Barnett is not seeking the right to personally examine the documents the People withheld to determine if they contain Brady material; rather, he is seeking to have the trial court conduct that examination. In fact, Ritchie actually supports Barnett's position because in Ritchie, the Supreme Court held that confidential records in the possession of the prosecution that are not subject to a clear state policy of absolute confidentiality are subject to discovery if they contain Brady material, and "[w]hen the state seeks to protect such privileged items from disclosure, the court must examine them in camera to determine whether they are `material' to guilt or innocence." (People v. Webb, supra, 6 Cal.4th at p. 518.)
It is important to note, however, that Barnett cannot simply request discovery of all of the district attorney's work product and thereby require the trial court to examine all such documents for Brady material. This is so because, as our Supreme Court noted in City of Los Angeles v. Superior Court (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129], under Ritchie a defendant cannot "`require the trial court to search through [privileged *64 documents] without first establishing a basis for his claim that [they] contain material evidence' [citation], that is, evidence that could determine the trial's outcome, thus satisfying the materiality standard of Brady, supra, 373 U.S. 83." (City of Los Angeles v. Superior Court, supra, 29 Cal.4th at p. 15, quoting Pennsylvania v. Ritchie, supra, 480 U.S. at p. 58, fn. 15 [94 L.Ed.2d at p. 58, fn. 15].)
Here, Barnett has not addressed whether the documents he is seeking constitute "material" evidence. Thus, he has not met the threshold burden required to trigger the trial court's obligation to review the documents in camera for Brady materials. Under these circumstances, we find no abuse of discretion in the trial court's denial of this discovery request.

K

Rap Sheets and Police Reports Regarding Juror C.L.
In his motion under section 1054.9, Barnett requested "[r]ap sheets, police reports, and any other portions of the Butte County Superior Court's file on Juror [C.L.]'s certificate of rehabilitation which have not yet been disclosed to Mr. Barnett's counsel." In his initial brief, he explained that his postconviction investigation had revealed that Juror C.L. was ineligible to serve on a jury because he had prior felony convictions and his civil rights had not been restored, despite his statement to the contrary on his juror questionnaire.[23] Barnett further explained that the superior court had denied him copies of the rap sheet and the police reports that were in the court file. He contends that "[t]he information in the sealed portion of the court file, as well as any information in the possession of the District Attorney and law enforcement agencies involved in investigating [Juror C.L.]'s past criminal conduct and his application for certificate of rehabilitation, must be disclosed."
In their formal response, the People asserted that "Juror [C.L.] was not a witness and therefore the People are not required to supply petitioner with any information about him under any conceivable discovery rule and particularly not under Penal Code section 1054.9."
Noting that it had "reviewed what is available in action 82726"the court case in which Juror C.L. sought a certificate of rehabilitationthe trial court *65 denied this request. The court stated for the record that it had placed a copy of the court file in a sealed envelope as a court exhibit.
Barnett contends he has "stated a reasonable basis to believe that there is relevant evidence in Juror [C.L.]'s file," and he "urges this Court to examine the records and disclose any information that would bolster the claim that Juror [C.L.] lied during voir dire about his own criminal record or that of his family."
(21) We deny this request because the present proceedingan original writ proceeding brought to obtain appellate review of the trial court's ruling on a motion under section 1054.9is simply not the proper vehicle for Barnett to obtain what he seeks. Section 1054.9 allows a defendant to obtain discovery from the prosecution and/or the law enforcement authorities involved in investigating or preparing the case against the defendant of materials in their possession. It does not provide a vehicle for seeking access to sealed portions of a court file from the court.
Barnett argues that "[a]ny postconviction discovery mechanism that does not allow for such discovery violates the Sixth and Fourteenth Amendment right to be tried by a fair and impartial jury and the Fourteenth Amendment right to due process in state postconviction proceedings." We are not persuaded, as Barnett cites no authority supporting that proposition. The general principle he cites that once a state makes postconviction review available, "its operation must conform to the due process requirements of the 14th Amendment" (Easter v. Endell (8th Cir. 1994) 37 F.3d 1343, 1345) is not enough to sustain his argument because Barnett fails to explain why a statute that provides for postconviction discovery from the prosecution and relevant law enforcement authorities violates due process if it does not also provide for discovery of sealed materials in the possession of the court.
Barnett next contends that even if section 1054.9 "does not authorize such disclosure, then the Superior Court had inherent power to authorize disclosure." Again, however, Barnett cites no authority for this assertion. Moreover, whether the court has such authority is simply not a question that is properly answered in this proceeding, which is a proceeding to obtain discovery from the prosecution and/or the law enforcement authorities involved in investigating or preparing the case against him.
Because the materials at issue include "rap sheets" and police reports, however, the question remains whether Barnett is entitled to obtain discovery of those documents that are in the possession of the prosecution and/or the relevant law enforcement authorities, and not simply in the court file relating to Juror C.L.'s certificate of rehabilitation. We address that question next.

*66 L

Criminal Records of Jurors C.L. and L.F.
In addition to requesting the materials addressed above regarding Juror C.L., in his motion under section 1054.9 Barnett requested more broadly "information regarding any arrests or convictions and all criminal activity known to law enforcement for [Juror C.L.] and [Juror L.F.] and their family members." In his initial brief, Barnett broadened this request even further, asserting that he was seeking "information regarding any arrests or convictions and all criminal activity known to law enforcement for the trial jurors, especially [Juror C.L.] and [Juror L.F.] and their family members." (Italics added.) He contended this information constituted category No. 4 material under Steele.
In their formal response, the People incorporated their response to Barnett's previous request.
The trial court denied this request.
Barnett contends the trial court erred in this ruling because he "has good cause for seeking this discovery." According to Barnett, his own postconviction investigation has uncovered information that Juror C.L. "lied about his own criminal record and that of his adult sons" and that Juror L.F. "concealed his own illegal drug use during the trial and his connections with criminals." Barnett further contends that both jurors have no privacy interest in their records because they are now deceased.
Good cause for the discovery is not the relevant standard, however. As we have repeatedly stated, section 1054.9 entitles a defendant to discovery only of materials to which he would have been entitled at time of trial. Thus, to convince us the trial court erred, Barnett must convince us that he would have been entitled to the criminal records of Jurors C.L. and L.F. (and presumably the other trial jurors) at time of trial.
Barnett cites People v. Murtishaw (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446] for the proposition that he "is entitled to information concerning the jurors in the hands of the prosecution and law enforcement agencies involved in the investigation of the case." That is an overstatement of the holding in Murtishaw. In Murtishaw, the defendant moved for "discovery of prosecutorial investigations of prospective jurors or for $1,000 to enable the defense to conduct a similar investigation." (Id. at p. 765.) Despite the district *67 attorney's acknowledgement "that his office had conducted field investigations of prospective jurors and maintained records showing how the jurors had voted in prior cases and whether they had arrest records," the trial court denied the defendant's motion. (Ibid.)
On review, the Supreme Court observed that "[w]hen courts . . . deny defendants who cannot afford similar investigations access to the prosecutor's records, the result is that prosecutors in case after case will have substantially more information concerning prospective jurors than do defense counsel. Such a pattern of inequality reflects on the fairness of the criminal process." (People v. Murtishaw, supra, 29 Cal.3d at pp. 766-767, fn. omitted.) Accordingly, the court held that in future cases trial courts would have "discretionary authority to permit defense access to jury records and reports of investigations available to the prosecution." (Id. at p. 767.)
(22) The People contend Murtishaw is of no assistance here because "there is no indication in the record that the prosecution engaged in [a field] investigation" of prospective jurors. The rule in Murtishaw, however, does not strictly depend on whether the prosecution conducted such an investigation. Under Murtishaw, the trial court had discretion to permit Barnett access to "jury records and reports of investigations available to the prosecution." (People v. Murtishaw, supra, 29 Cal.3d at p. 767.) Thus, regardless of whether the prosecution conducted an investigation that resulted in a report,[24] Barnett was entitled to seek access to "jury records . . . available to the prosecution." Such records would necessarily include the criminal records of the jurors, if any. And since Murtishaw refers to records available to the prosecution, and not just records in the possession of the prosecution, a defendant can seek access to the jurors' criminal records under Murtishaw even if the prosecution has not sought to obtain those records itself.
Here, we believe that if Barnett had sought access to the criminal records of Jurors C.L. and L.F. under Murtishaw, based on a showing from his own investigation that Juror C.L. "lied about his own criminal record" and that Juror L.F. "concealed his own illegal drug use during the trial and his connections with criminals," it would have been an abuse of discretion for the trial court to have denied his request. Accordingly, we conclude he has shown *68 he was entitled to those records at time of trial, and the trial court abused its discretion in denying his request for discovery of those records under section 1054.9.
To the extent Barnett's request was broader, seeking not only the criminal records of Jurors C.L. and L.F., but also the criminal records of their family members and those of the other trial jurors, and seeking more generally "information regarding any arrests or convictions and all criminal activity known to law enforcement for the trial jurors, especially [Juror C.L.] and [Juror L.F.] and their family members," Barnett has failed to show any entitlement to those records or that information under Murtishaw.
Seeking other authority for such discovery, Barnett contends "[t]he logic of cases such as Brady v. Maryland impels this Court to order disclosure of records in the possession of the government relating to [his] jurors." We cannot agree. "Under Brady, supra, 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197], the prosecution must disclose to the defense any evidence that is `favorable to the accused' and is `material' on the issue of either guilt or punishment." (City of Los Angeles v. Superior Court, supra, 29 Cal.4th at p. 7, italics added.) Even assuming a juror's criminal record could be deemed favorable to the defendant, it certainly cannot be deemed material on the issue of guilt or punishment. Thus, Barnett's right to exculpatory information under Brady does not support his request for the criminal records of the trial jurors.
Barnett contends that "[i]f at trial, Mr. Barnett had learned that Juror [C.L.] lied about his criminal record and his civil rights, Mr. Barnett would have been entitled to an inquiry." The authorities Barnett cites, however, stand for nothing more than the proposition that when a question of juror partiality or misconduct arises, the defendant should be given the opportunity to prove juror bias or misconduct. (See, e.g., Smith v. Phillips (1982) 455 U.S. 209, 215 [71 L.Ed.2d 78, 85, 102 S.Ct. 940] ["the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"].) Barnett offers no authority for the further proposition that the opportunity to prove juror bias or misconduct includes the right to discovery from the prosecution of materials relating to the juror in question.
Barnett tries to bridge this gap by arguing that "[i]f a prosecutor conceals information about a juror's biases, the prosecutor violates his obligations pursuant to the Due Process Clause." While that may be so, it provides no basis for Barnett's discovery request here, at least to the extent that request extends beyond the criminal records of Jurors C.L. and L.F. Barnett has *69 offered nothing to suggest that at time of trial the People were aware of, but actively concealed from him, information about the bias of any of the jurors. We have concluded already that Barnett is entitled to the criminal records of Jurors C.L. and L.F. under Murtishaw, but Barnett has offered no authority supporting his request for any juror materials beyond those records (including but not limited to the criminal records of the family members of Jurors C.L. and L.F.).
For the foregoing reasons, we conclude the trial court abused its discretion when it denied Barnett's request for the criminal records of Jurors C.L. and L.F.

M

Criminal Records of Witnesses' Family Members
In his motion under section 1054.9, Barnett requested "information regarding any arrests or convictions and all criminal activity known to law enforcement for family members of the State's witnesses." In his initial brief, he asserted this constituted category No. 4 material under Steele.
In their formal response, the People asserted that "[n]othing exists as to th[is] request[] beyond that already disclosed to petitioner. As already noted, the prosecutor has no duty to actively investigate the facts and circumstances of the case for the benefit of the accused. [Citation.] Nor are the People required to make a complete and detai[l]ed accounting to the defense of all police investigative work on a case."
The trial court denied this request.
Barnett contends "[t]his ruling was an abuse of discretion because such information can be impeaching." Beyond the arguments we have rejected already, the People assert only that the trial court "was within its discretion to deny discovery requests for materials that provide, at most, limited relevance for collateral impeachment of a witness."
In support of his discovery request, Barnett cites People v. Crawford (1967) 253 Cal.App.2d 524 [61 Cal.Rptr. 472]. In Crawford, the defendant complained "that his cross-examination of a prosecution witness was unduly restricted by the trial court" because the court "refus[ed] to permit him to cross-examine [a] witness . . . in the presence of the jury on the alleged arrest of [the witness's] wife" "the previous night." (Id. at p. 533.) The appellate *70 court concluded "the arrest would have been material to impeach the witness (by showing a motive for testifying against [the defendant]) if it also could be shown by direct or circumstantial evidence that the witness had knowledge of the arrest" but "the defendant failed to offer any proof that the witness knew or could have known of his wife's arrest." (Id. at pp. 533-534.)
At its broadest, Crawford stands for the proposition that evidence of the recent arrest of a prosecution witness's close family member may be relevant for impeachment purposes if it can be shown that the witness knew of the arrest, because the arrest may provide a motive for the witness to cooperate with the prosecution and thereby may suggest prosecutorial bias on the part of the witness.
U.S. v. Lankford (11th Cir. 1992) 955 F.2d 1545the other case Barnett cites in support of his argumentis similar. There, the appellate court held the trial court erred by limiting the defendant's cross-examination of the chief government witness against him about "the fact that [his] sons had been arrested by state authorities for the sale of twenty pounds of marijuana." (Id. at pp. 1548-1549.) According to the appellate court, "Notwithstanding the fact that [the witness] had made no deal with the government concerning a federal investigation into his sons' marijuana arrest, his desire to cooperate may have in fact been motivated by an effort to prevent such an investigation. We cannot imagine a much stronger motive for testifying on behalf of the government than the desire to protect one's children." (Id. at p. 1549, fn. omitted.)
(23) As we have noted previously, "[t]he prosecution's constitutional duty to disclose all substantial material evidence favorable to an accused `extends to evidence which may reflect on the credibility of a material witness.'" (People v. Hayes, supra, 3 Cal.App.4th at p. 1244.) Even under the reasoning of Crawford and Lankford, however, the fact that a close family member of a prosecution witness was recently arrested does not reflect on the credibility of the witness unless the witness knows of the arrest. Thus, contrary to Barnett's assertion, the mere fact of the arrest alone is not "impeaching." It is only the combination of the arrest and the witness's knowledge of it that provides a basis for impeaching the witness.
Barnett offers no authority for the proposition that a fact that in and of itself does not bear on a witness's credibility must be disclosed because it might bear on the witness's credibility if another fact is also true. In the absence of such authority, we conclude that Barnett has failed to show an abuse of discretion by the trial court in the denial of this discovery request.
*71 It is also worth noting that even if the arrest of a close family member, by itself, could be deemed impeaching, Barnett's discovery request was not limited to information about any arrest of a close family member of a prosecution witness for which charges could still be brought. Instead, Barnett asked for "information regarding any arrests or convictions and all criminal activity known to law enforcement for family members of the State's witnesses." Thus, Barnett's request encompassed all arrests of family members, not only those for which charges could still be brought, as well as all convictions, which fall outside the reasoning of Crawford and Lankford and have no discernible bearing on the witness's credibility. The overbreadth of Barnett's request provides yet another reason for us to find no abuse of discretion in the trial court's denial.

N

Communications Regarding Barnett, the Case Against Him, and the Witnesses
In his motion under section 1054.9, Barnett requested "any document, record or paper and audio or video recording of all information relayed to law enforcement regarding [him], the case against him and the State's witnesses." He also requested "all records of all communications about [him], the case against him, or the State's witnesses between law enforcement and any person, including the dates, times, locations, and details of all such communications." In his initial brief, he asserted these materials fell within the scope of the discovery order from trial and were therefore category No. 2 materials under Steele.[25]
In their formal response, the People asserted that "[n]othing exists as to these requests beyond that already disclosed to petitioner. As already noted, the prosecutor has no duty to actively investigate the facts and circumstances of the case for the benefit of the accused. [Citation.] Nor are the People required to make a complete and detai[l]ed accounting to the defense of all police investigative work on a case."
The trial court denied these requests.
Barnett contends the trial court abused its discretion in denying these requests "because the information sought would facilitate the ascertainment *72 of facts and a fair trial" and he "is entitled to discover `any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense.'" The People do not offer any argument against these requests that we have not already rejected.
Since Barnett no longer contends these requests were for materials that fell within the scope of the February 1987 discovery order, we consider these requests as ones for category No. 4 materialsthat is, materials to which he would have been entitled at time of trial if he had asked for them. Viewed in that light, we conclude the trial court did not abuse its discretion in denying these requests.
Barnett cites three authorities in support of his requests.[26] The first is Pitchess v. Superior Court (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], in which our Supreme Court explained that "an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial." (Id. at p. 536.) The Pitchess court also explained, however, that "[t]he requisite showing may be satisfied by general allegations which establish some cause for discovery other than `a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.'" (Id. at p. 537, italics added.)
Here, Barnett has not made the showing required by Pitchess because he has not established any cause for his broad discovery requests "other than `a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.'" (Pitchess v. Superior Court, supra, 11 Cal.3d at p. 537.) Accordingly, Pitchess is of no assistance to him.
(24) The second case Barnett cites is Ballard v. Superior Court (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838]. In Ballard, the court quoted a law review article by Chief Justice Traynor, in which he wrote, "`A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense.'" (Id. at p. 167.) The court also explained, however, that "[a] defendant's motion for discovery must nevertheless describe the requested *73 information with at least some degree of specificity and must be sustained by plausible justification." (Ibid.)
Here, Barnett does not seek any specific information supported by plausible justification. Instead, his requests for "all information relayed to law enforcement regarding [him], the case against him and the State's witnesses" and "all records of all communications about [him], the case against him, or the State's witnesses between law enforcement and any person" together amount to nothing less than a request for all information the People obtained in their investigation of the crime, which is supported by no particular justification other than the suggestion that something useful to him may be found therein. Ballard, like Pitchess, does not support such broad requests.
Finally, Barnett cites People v. Riser (1956) 47 Cal.2d 566 [305 P.2d 1]. There, the court stated that "the state has no interest in denying the accused access to all evidence that can throw light on issues in the case." (Id. at p. 586.) The court also explained, however, that a defendant's right to compel production of evidence from the prosecution during trial arises only "on a proper showing . . . when it becomes clear during the course of trial that the prosecution has in its possession relevant and material evidence." (Id. at pp. 585-586.)
Barnett has not made any such showing here. His requests for essentially all of the information the People obtained in their investigation of the crime are not requests for "relevant and material evidence." Accordingly, like Pitchess and Ballard, Riser does not support the requests.
In light of Barnett's failure to show that he would have been entitled at time of trial to the materials he seeks, the trial court did not abuse its discretion in denying these requests.

O

Records of Conversations with Witnesses
In his motion under section 1054.9, Barnett requested "audio and/or video records and notes or documentation of any sort of any conversations between law enforcement and Delinda Olsen or Philippe Enoingt at their home, or any other person at the Olsen-Enoingt home, from July 7, 1986 through August 31, 1986." In his initial brief, he asserted these materials fell within the scope of the discovery order from trial and were therefore category No. 2 materials under Steele.
*74 In their formal response, the People asserted that "[n]othing exists as to th[is] request[] beyond that already disclosed to petitioner. As already noted, the prosecutor has no duty to actively investigate the facts and circumstances of the case for the benefit of the accused. [Citation.] Nor are the People required to make a complete and detai[l]ed accounting to the defense of all police investigative work on a case."
The trial court denied this request.
Barnett contends the trial court's ruling was an abuse of discretion because when Olsen testified against him, there were multiple felony counts pending against her and Enoingt in Butte County. He contends he "was entitled to investigate Olsen and Enoignt's contacts with law enforcement to explore their bias against him or for the State or motive to curry favor with the State." He also claims that "law enforcement had come to [Olsen's] home to discuss the case against Mr. Barnett with her and Enoingt at least twice before . . . June 2, 1987" and that "Olsen has stated in a sworn declaration that law enforcement threatened to take Olsen's children from her unless she testified against Mr. Barnett."
The People do not offer any argument against this request that we have not already rejected.
Whether we consider this a request for category No. 4 materials or a request for category No. 2 materials subject to disclosure under Brady,[27] we find no abuse of discretion in the trial court's ruling. In support of this discovery request, Barnett cites only People v. Crawford, supra, 253 Cal.App.2d at page 533 and U.S. v. Lankford, supra, 955 F.2d at pages 1548-1549, which we have discussed already. Those cases stand for the proposition that evidence of the recent arrest of a prosecution witness's close family member may be relevant for impeachment purposes if it can be shown that the witness knew of the arrest. That proposition has no relevance here. To the extent Barnett seeks these materials on the belief they may contain some evidence of threats Olsen claims were made to get her to testify against Barnett, Barnett has failed to offer any explanation of what Olsen's testimony was or why it was material to his conviction. Absent such an explanation, we conclude he has failed to show an abuse of discretion by the trial court in its denial of this request.[28]

*75 P

Butte Interagency Narcotics Task Force
In his motion under section 1054.9, Barnett requested "any notes, reports or documentation of any sort, including audio or video recordings, of any interview or contact by members of the Butte Interagency Narcotics Task Force (the task force) and any person concerning Mr. Barnett, the case against him, or the State's witnesses, including contacts initiated in pursuance of other criminal cases." In his initial brief, he asserted these materials fell within the scope of the discovery order from trial and were therefore category No. 2 materials under Steele.
In their informal response to this request, the People noted, "Two (2) Daily Information Memo's (DIM's) provided."[29] Barnett complained that one of the two documents was "heavily redacted," and he requested "access to all records in the possession of the task force regarding [him] in unredacted form."
In their formal response, the People asserted that the task force was not part of the prosecution team because the task force did not "assist[] in the investigation of the murder with which petitioner was charged." Nevertheless, the People explained that "at the specific request of the petitioner's appellate counsel, the People requested any information that the task force had in its files on petitioner. The People received that information by way of subpoena and disclosed it to petitioner."
The trial court denied this request.
Barnett contends the trial court abused its discretion in denying this request because "[the task force] was involved in the investigation of the case against [him] and co-defendant Tom Burgess." Noting the People's production of the two DIM's, Barnett contends "the State recognizes that [the task force] was an agency involved in the investigation and prosecution of the case."
The People contend that "Barnett has not established that [the task force] was part of the prosecution team as defined by Steele" and "[t]he fact that the prosecutor, in the spirit of cooperation [citation], obtained materials from [the *76 task force] on petitioner's behalf in no way establishes that [the task force] was part of the prosecution team in this case."
According to Barnett, the task force was involved in the investigation and prosecution of the charges against him because (1) the task force arrested Burgess, his alleged coparticipant; (2) the task force produced (in response to the People's subpoena) a report noting that a "CI" (confidential informant or citizen informant) reported that Barnett and Burgess were involved in methamphetamine trafficking; and (3) the task force admitted in 2001 that it had records regarding Barnett, but they had been destroyed.
The three factors on which Barnett relies do not demonstrate the task force was involved in the investigation or prosecution of the case against him. The mere fact that the task force officers arrested an alleged coparticipant for the same crimes does not establish that agency's involvement in the investigation or prosecution of the case against Barnett. Similarly, the mere fact that the task force had in its records a report from a "CI" that Barnett and Burgess were both involved in trafficking methamphetamine does not establish that agency's involvement in the investigation or prosecution of the murder case against Barnett. Finally, the fact that the task force, at one time, had "files concerning Mr. Barnett" does not establish that agency's involvement in the investigation or prosecution of this case against Barnett.
In short, Barnett has not pointed to anything that establishes the task force was one of the "law enforcement authorities" to which section 1054.9 applies. Accordingly, Barnett has failed to show any abuse of discretion by the trial court in its denial of this request.

Q

Witnesses' Other Cases
In his motion under section 1054.9, Barnett requested "the case name, number, and county of any case other than People v. Barnett, Butte County Superior Court Case No. 91850, that any witness in the Barnett trial also testified in," as well as "a listing of those witnesses who have provided information to law enforcement in connection with any other investigation" and "documentation, including audio or video recording of such contacts between witnesses and law enforcement, including the content of such contact, and documentation in any form of law enforcement's evaluation of the witness's credibility." In his initial brief, he asserted "[t]his information may provide impeachment material or, in the case of defense witnesses, evidence that could have been used to bolster their credibility after their *77 credibility was attacked on cross-examination." He further asserted "[t]his information falls within Category 4."
In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner." The People further asserted that the burden placed on the People to comply with the request far exceeded Barnett's need for the discovery.
The trial court denied this request.
Barnett contends this ruling was an abuse of discretion for the same reasons discussed above in connection with his requests for information relayed to law enforcement regarding him and all records of communications about him. Specifically, Barnett relies on Pitchess, Ballard, and Riser to justify his discovery request because the information requested might lead to the discovery of information that would call into question the credibility of the People's witnesses or bolster the credibility of his witnesses.
The People contend that "[g]iven the speculative and generalized nature of Barnett's request, in addition to its incredible breadth, the respondent court properly denied Barnett's fishing expedition."
Barnett first contends that "the burden on the State is no justification for failing to comply with disclosure obligations." In support of that contention, Barnett cites In re Brown (1998) 17 Cal.4th 873 [72 Cal.Rptr.2d 698, 952 P.2d 715], a case involving the prosecution's failure to comply with its constitutional duty to disclose exculpatory material under Brady. Brown is inapposite here because Barnett's present request was not one for exculpatory Brady material; rather, it was for detailed information about other cases and investigations the witnesses in his trial had participated ininformation which might well have no bearing on the murder case against Barnett at all.
(25) Contrary to Barnett's assertion, the burden on the People of complying with a broad discovery request such as the one at issue here is a relevant factor when the defendant seeks information that is not subject to Brady. Indeed, as Barnett himself later admits (in contradiction of his earlier argument), California case law establishes that "[a]lthough policy may favor granting liberal discovery to criminal defendants, courts may nevertheless refuse to grant discovery if the burdens placed on government and on third parties substantially outweigh the demonstrated need for discovery." (People v. Kaurish (1990) 52 Cal.3d 648, 686 [276 Cal.Rptr. 788, 802 P.2d 278].) Barnett contends, however, that "here, the State made no showing in *78 the Superior Court regarding the burden on the State to provide the information Mr. Barnett seeks."
Barnett cites no authority for the proposition that the People must make an evidentiary showing of the burden involved in complying with a particular discovery request before the trial court can exercise its discretion to deny that request under Kaurish and related authorities. Indeed, there is nothing in Kaurish even suggesting such a requirement. There, the defendant had sought to "discover `police reports pertaining to child molestation killings in the Hollywood area' for the six months preceding and following the murder" at issue. (People v. Kaurish, supra, 52 Cal.3d at p. 686.) The trial court granted a motion to quash the subpoena, and on review the Supreme Court concluded the trial court did not abuse its discretion. (Id. at p. 687.) In doing so, the court did not cite to any evidence of the burden the discovery request placed on the People, but instead simply noted that "defendant's request was broad and somewhat burdensome, both with regard to expenditure of police resources to review files and to the privacy interests of third parties." (Ibid.) Presumably the court reached this conclusion based on the face of the request alone.
On its face, Barnett's request here is even more burdensome than the request at issue in Kaurish in that it seeks information on cases and investigations throughout the state involving any witness who testified in Barnett's murder prosecution. Moreover, Barnett's request is not supported by any particularly compelling justification. He has not alleged that he expects to find information bearing on the credibility of the witnesses in the materials he has requested, only that he may find it. Under these circumstances, we find no abuse of discretion in the trial court's denial of this discovery request.

R

Street Talk Regarding Barnett's Innocence
In his motion under section 1054.9, Barnett requested "documentation in any form of any person conveying information to law enforcement in Butte County, including [the task force], regarding Mr. Barnett, the case against him or the witnesses in his case. This request includes information about any person who conveyed information to law enforcement regarding `street talk' about the case, and any `street talk' to the effect that Mr. Barnett was innocent, was being set up and/or was framed." In his initial brief, he asserted these materials fell within the scope of the discovery order from trial and were therefore category No. 2 materials under Steele.
*79 In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. Furthermore, the constitutional mandate of the People to disclose exculpatory evidence to a defendant does not require the prosecutor to disclose a `rumor' of exculpatory evidence."
The trial court granted the request "contained in the first sentence" but denied the request "as far as any, quote, street talk, end quote, is concerned."
Barnett contends "[t]his order is unfathomable" because "[t]here is evidence in the record that witnesses told law enforcement that `street talk' indicated that Mr. Barnett was being framed," and "[s]uch information is exculpatory and must be disclosed."
(26) The People contend that under Brady, "the prosecution is not required to disclose mere `rumors' of exculpatory evidence." They cite two cases in support of that assertion. The firstUnited States v. Agurs (1976) 427 U.S. 97, 107 [49 L.Ed.2d 342, 351-352, 96 S.Ct. 2392]is inapposite, because it deals with the duty of a prosecutor to produce evidence to the defendant when the defendant makes only a general request for Brady material, or no request at all. That is not the case here. Here, we are dealing with the People's duty to produce evidence in response to a specific requestthat is, for "information about any person who conveyed information to law enforcement regarding `street talk' about the case, and any `street talk' to the effect that Mr. Barnett was innocent, was being set up and/or was framed." On that subject, the court in Agurs had this to say: "Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." (Agurs, at p. 106 [49 L.Ed.2d at p. 351].)
The second case the People citeSmith v. Stewart (9th Cir. 1998) 140 F.3d 1263, 1273is somewhat closer on point. There, the defendant argued "that his Brady rights were violated because counsel had not been informed that the police had heard about a rumor in the community to the effect that [his] brother was in the car with him, but that Smith himself had gone into the store to commit the robbery." (Smith v. Stewart, supra, 140 F.3d at p. 1273, fn. omitted.) In rejecting this argument, the court stated: "No doubt under *80 Brady the state had the obligation to disclose favorable evidence to Smith. [Citation.] However, it is pretty difficult to see how the information was favorable. If it were, it was so weak, so remote, and so inconclusive that it is highly unlikely that it would have had any effect whatever upon the verdict, much less would it `undermine confidence in the outcome' of the trial." (Ibid.)
The problem with the People's reliance on Smith is that the rumor in Smith was not really exculpatory, since the rumor only confirmed that the defendant had committed the crime (albeit with the possible assistance of his brother). Here, on the other hand, the "street talk" that Barnett's request sought information about was exculpatory, to the extent that "street talk" was "to the effect that Mr. Barnett was innocent, was being set up and/or was framed." Moreover, it appears Smith, like Agurs, involved the prosecutor's duty to disclose exculpatory evidence when no request for Brady material had been made. This case, on the other hand, involves a request for a specific category of information.
We believe that Barnett's request for information received by law enforcement about "street talk" regarding Barnett's innocence "describe[s] the requested information with at least some degree of specificity" and is "sustained by plausible justification." (Ballard v. Superior Court, supra, 64 Cal.2d at p. 167.) Thus, had Barnett sought this information at time of trial, he would have been entitled to it, and therefore it was an abuse of discretion for the trial court to deny his request for this information in his motion under section 1054.9.

S

Information Regarding Pathologist
In his motion under section 1054.9, Barnett requested "information which the prosecution knew or should have known about [pathologist Gwen] Hall's testimony in other cases involving death by stabbing, including the number of autopsies she had performed on such decedents, testimony in other cases involving death by shotgun shots, including the number of autopsies she had performed, and testimony involving decedents who had been bound, including the number of such autopsies she had performed." Barnett further requested "the preliminary hearing and trial testimony of every case in which Dr. Hall testified as a prosecution witness from 1984-2000 and copies of all coroner's reports relating to such testimony. As to those cases, Mr. Barnett requests the case names and numbers and county where tried." Barnett also requested "copies of any document generated by or in the possession of law enforcement concerning Dr. Hall's credibility and any written complaints pertaining to Dr. Hall's credibility"; "any information regarding arrests and/or *81 convictions of Dr. Hall"; and "a list of all instances in which Dr. Hall changed her reports or testimony in any case, or where an attorney accused her of changing her findings or opinions or of being biased or giving false testimony or fabricating evidence, including the names and numbers of the cases, the county where tried, and the names of the attorneys involved." In his initial brief, he asserted these materials were category No. 2 and/or No. 4 materials under Steele.
In their formal response, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner." The People further asserted that the burden placed on the People to comply with the request far exceeded Barnett's need for the discovery.
The trial court denied the request.
Relying on Pitchess and Ballard, Barnett contends the trial court abused its discretion in denying this request because he is "seek[ing] any information in the hands of the State bearing on Dr. Hall's credibility and expertise."
The People contend that "Barnett's request is beyond the scope of section 1054.9" because he is "seeking materials from as late a date as 2000." To the extent Barnett's request encompasses material that did not exist at time of trial, we agree it is beyond the scope of the statute. As we have explained already, by its very terms section 1054.9 covers only materials to which the defendant "would have been entitled at time of trial." (§ 1054.9, subd. (b), italics added.) Thus, Barnett's request for materials relating to Dr. Hall's involvement in other cases after his trial is beyond the scope of the statute. Whether or not the People had a posttrial duty under Brady to disclose some or all of this material to Barnett has nothing to do with whether the People can be ordered to produce such information under section 1054.9. Because it is limited to materials to which the defendant would have been entitled at time of trial, that statute simply does not provide a vehicle for a defendant to enforce any posttrial Brady obligations the People may have.
Of course, that does not entirely resolve Barnett's request, since the request encompassed other materials that existed (if they existed at all) at time of trial. As to those materials, the People contend the trial court's ruling was not an abuse of discretion because the burden on the People of complying with the request outweighed any possible benefit to Barnett of compliance.
(27) "In the exercise of its discretion, the court may compare the defendant's demonstration of need for the matter sought with the burden that *82 would be placed on the prosecution in providing it. [Citations.] Pertinent considerations include whether the demand for discovery is overly broad [citations] and, importantly, the nature of discovery that has been granted." (Lemelle v. Superior Court (1978) 77 Cal.App.3d 148, 165 [143 Cal.Rptr. 450].)
On the issue of burden, Barnett repeats his argument that the People offered no evidence of the burden. We have concluded already, however, that an evidentiary showing is not required. The question is whether the trial court could have reasonably determined that the apparent burden of complying with Barnett's broad request substantially outweighed Barnett's need for discovery. Of course, that requires us to examine the "need" Barnett demonstrated for the information he seeks. On this point, Barnett contends the information he seeks is relevant to impeaching Dr. Hall's credibility. He further claims that he "has already developed evidence that Dr. Hall misrepresented her qualifications in this trial." That evidence consists of a letter from the American Board of Pathology which allegedly shows that Dr. Hall testified falsely at Barnett's preliminary examination when she claimed she had certificates in forensic pathology and anatomic pathology.
Under these circumstances, we find no abuse of discretion in the trial court's ruling. Barnett's request sought an extremely broad array of materials, including (but not limited to) the preliminary hearing and trial testimony of every case in which Dr. Hall testified as a prosecution witness over a four-year period (from 1984 through 1988), and copies of all coroner's reports relating to such testimony. As justification for that request, Barnett asserted only that Dr. Hall's credibility was in issue because of an allegedly false statement she made at his preliminary examination about her certifications in pathology. It is a matter of great speculation, however, whether any of Dr. Hall's other testimony which Barnett sought to discover would have provided any further basis to challenge her credibility as a witness. Moreover, the trial court granted another request Barnett made for discovery related to Dr. Hallspecifically, his request for "any records to which the prosecution had reasonable access regarding [her] qualifications." In light of all these factors, we cannot say the trial court acted outside the bounds of reason in denying this discovery request.

T

Homicide Investigation Manuals
In October 2004, after Barnett filed his motion under section 1054.9 and after his attorneys met with the district attorney in an attempt to resolve the matter, Barnett's attorneys noted in a letter to the district attorney that "[t]he *83 recent discovery disclosures" had "prompt[ed some] additional discovery requests." One of those requests was for "the protocols, guidelines or manual in effect in 1986-1988 for homicide investigations by the Butte County Sheriff's Office and the Butte County District Attorney's investigative staff." In his initial brief on the motion, Barnett added this request to those made in the motion and asserted these materials were category No. 4 materials under Steele.
In their informal response to the motion, the People asserted, "No manual existed in 1986-1988." In his second brief, Barnett requested "a declaration to that effect from persons with personal knowledge." In their formal response to the motion, the People asserted that Barnett had "failed to show a plausible justification for" the requested material.
The trial court denied the request.
Barnett contends the trial court's ruling was an abuse of discretion because he is "entitled to investigate the quality of the police investigation in the case against him and to investigate whether the police followed their own protocols in investigating the case."
The People respond that Barnett has not offered a "plausible justification" for his request because the request is "based on nothing more than his speculative hope that something helpful to him will turn up."
The cases on which Barnett relies to support his discovery request may stand for the proposition that evidence of a poor police investigation can be relevant in a criminal prosecution. It does not follow, however, that just because the quality of the investigation is a relevant subject, a trial court abuses its discretion if it refuses to allow discovery of any written protocols, guidelines, or manuals that exist for conducting such investigation. Here, Barnett has not offered any fact or even any allegation suggesting there was something wrong with the quality of the investigation in this case. In the absence of any asserted basis for believing the investigation was flawed, we cannot say the trial court acted beyond the bounds of reason in determining that Barnett had not shown a plausible justification for the discovery he sought. Accordingly, we find no abuse of discretion in the trial court's denial of this request.

U

Burgess's Arrests
In their letter to the district attorney in October 2004, Barnett's attorneys noted that Burgess's rap sheet (which was among the missing pages of trial *84 discovery the People had recently provided) "shows that he was arrested on July 10, 1986, and charged with assault with deadly weapon, robbery and possession of narcotics. No disposition of those charges is indicated on the rap sheet. What is the disposition of those three charges? If they were dismissed, when were they dismissed?" In his initial brief on the motion under section 1054.9, Barnett added this request to those made in the motion and asserted the request was for category No. 2 materials under Steele.
In their informal response to the motion, the People asserted, "The arrest on July 10, 1986 was relative to the initial charges in this matter. The charges were dismissed." In his second brief, Barnett requested "documentation establishing these facts from prosecution and law enforcement agencies involved in the investigation and prosecution of the case." In their formal response to the motion, the People asserted that "[t]he short answer is that the entire discovery given over to petitioner at trial establishes these `facts.' Further, the dismissal of the charges against Burgess is in the court record, having occurred pursuant to Penal Code Section 1099 on May 9, 1988, the first day of trial."
The trial court denied the request "to the extent it requests information beyond what has already been provided for and/or ordered herein."
Barnett contends the court's ruling was an abuse of discretion because he "could have impeached [Burgess, who testified against him,] with the fact that he had charges pending against him that were not disposed of until after he testified." Barnett contends the People's explanation for the disposition of the charges against Burgess "does not account for the narcotics charge."
The rap sheet for Burgess that was part of the original discovery appears to show that Burgess was arrested on July 10, 1986, for assault with a deadly weapon, robbery, and possession of a controlled substance. On July 14, 1986, a complaint was filed in the Oroville Justice Court charging Burgess with assault by means likely to produce great bodily injury and four counts of kidnapping. On August 11, 1986, an information was filed in the superior court charging Burgess with two counts of robbery, assault with a firearm, and four counts of kidnapping. On the first day of trial, the trial court granted the People's motion to dismiss the information against Burgess.
Barnett complains that the dismissal of the information "did not resolve the narcotics charge because the narcotics charge was not included in the complaint or information filed against Burgess." Thus, he implies, there must be other material in the possession of the prosecution and/or the relevant law enforcement authorities showing the disposition of the narcotics charge.
That Barnett was arrested for possession of a controlled substance does mean that a charge of possession of a controlled substance was ever filed *85 against him. Indeed, it appears from the materials already in Barnett's possession (described above) that no such charge was ever filed. Under these circumstances, we find no abuse of discretion in the trial court's denial of this discovery request.

V

"The Hooker Rape Victim"
In early September 2004, Barnett's attorneys apparently had a conversation with the district attorney and his chief investigator regarding Barnett's discovery motion. During that conversation, the investigator apparently referred to someone as "the hooker rape victim." That reference generated the following inquiry in a letter dated September 9, 2004: "Please provide any information or records, in any form, regarding the witness whom Mr. Koester referred to as `the hooker rape victim.' There were two witnesses who alleged that Mr. Barnett raped them: [M.G.] and [H.T.]. While we assume that Mr. Koester's comment referred to one of these two witnesses, we ask for any information or records indicating that any of the State's witnesses was a `hooker.'"
Having received no response to their inquiry, Barnett's attorney reiterated their request for information on the "hooker rape victim" in their October 2004 letter. In his initial brief on the motion under section 1054.9, Barnett added this request to those made in the motion and asserted the request was for category No. 2 materials under Steele.
In their informal response to the motion, the People asserted, "This comment made by [Koester] was in reference solely to the attire worn by [H.T.], a witness in the People's penalty phase case. The state has no information which connects [H.T.] with the crime of prostitution. A rap sheet for [H.T.] has been acquired and is included." In his second brief, Barnett requested "that Mr. Koester provide this information in a declaration under oath." In their formal response to the motion, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. This is not a proper discovery request but a request for the People to write a postconviction report for the petitioner, which is beyond the scope of Penal Code Section 1054.9 and Steele. Additionally there is no duty to prepare notes or a report at the request of a defendant of conversations (or observations) not presently reduced to writing. [Citation.] Nor are the People required to make a complete and detailed accounting to the petitioner of all investigative work on a case."
The trial court denied the request.
*86 Barnett contends the trial court's ruling was an abuse of discretion because "[i]nformation that one of the State's witnesses was a prostitute was impeachment material that was not disclosed at the time of trial." The People do not offer any argument against this request that we have not already rejected.
To the extent Barnett seeks information about the particular witness to whom the investigator referred as "the hooker rape victim," the People's informal response provided Barnett everything to which he might have been entitled. The investigator identified the witness to whom he was referring, explained that his reference to her as a "hooker" was based on her attire, stated that the People had no information actually connecting her with the crime of prostitution, and provided Barnett with a copy of her rap sheet. As to this aspect of Barnett's request, there was no discovery left for the court to order.
Barnett's request, however, also sought "any information or records indicating that any of the State's witnesses was a `hooker.'" (Italics added.) Barnett contends he was entitled to such material "because evidence of a witness's criminal activity could have been used to impeach."
Even assuming there was evidence one or more of the prosecution's witnesses was a prostitute, the People had no constitutional duty to disclose that evidence to Barnett unless it was material. Because Barnett has failed to demonstrate the materiality of any such evidence, he has failed to show he was entitled to such evidence at time of trial. Accordingly, the trial court did not abuse its discretion in denying this request.

W

Dave McGee's Propensity for Violence
Other comments the investigator apparently made during the conversation in early September 2004 about being threatened by one Dave McGee led Barnett's attorneys to recount an incident Barnett had told them about McGee in which McGee allegedly "climb[ed] on top of a police car and defecat[ed]." Based on these incidents, Barnett's attorneys requested "any information regarding Dave McGee's history of violence and disrespect for law enforcement." In his initial brief on the motion under section 1054.9, Barnett added this request to those made in the motion and asserted the request was for category No. 2 materials under Steele.
In their informal response to the motion, the People asserted, "The State has no information regarding the incident as described in the defendants [sic] brief. Indeed, had the incident actually happened, it would be common *87 knowledge within Butte County law enforcement as a legend which would endure the decades of time." In his second brief, Barnett requested "that the Court compel the prosecution to provide a declaration under oath to that effect, detailing its efforts to investigate the matter in the records of other prosecution and law enforcement agencies involved in the investigation and prosecution of the case." In their formal response to the motion, the People asserted, "Nothing exists as to this request beyond that already disclosed to petitioner. This is not a proper discovery request but a request for the People to write a post-conviction report for the petitioner, which is beyond the scope of Penal Code Section 1054.9 and Steele. Additionally there is no duty to prepare notes or a report at the request of a defendant of conversations (or observations) not presently reduced to writing. [Citation.] Nor are the People required to make a complete and detailed accounting to the petitioner of all police investigative work on a case."
The trial court denied the request.
Barnett contends the trial court abused its discretion in denying this request because "McGee testified that Mr. Barnett was the aggressor in a fight between them, whereas Mr. Barnett testified that McGee was the aggressor." According to Barnett, "In a contest of credibility, evidence of McGee's reputation for violence would have been compelling evidence impeaching McGee and corroborating Mr. Barnett."
The People do not offer any argument against this request that we have not already rejected.
Even assuming evidence of McGee's reputation for violence would have been favorable to Barnett, he has failed to make any showing that such evidence would have been material. Thus, he has failed to show any abuse of discretion by the trial court in its denial of this request.

X

Identification of Redacted Documents
In his second brief on the motion under section 1054.9, Barnett added this final request: "[S]ometimes it is hard to tell if a document has been redacted. Mr. Barnett requests that the Court compel the prosecution to provide a declaration from someone with personal knowledge stating which documents provided in discovery are redacted and that none of the other documents have been redacted."
In their formal response to the motion, the People did not respond to this request.
*88 The trial court denied the request.
Barnett contends this ruling was an abuse of discretion because "[t]here is no legitimate state interest in hiding redacted material, or concealing the fact that material has been redacted." The People respond that "Barnett has presented no case or other rule for this novel request. . . . Certainly nothing in section 1054.9 or in California's general discovery laws requires such a[n] undertaking by the prosecution." In reply, Barnett asserts that "[t]he [federal] Freedom of Information Act . . . requires government agencies to indicate on the document where any deletions or redactions were made." He also cites a state court decision from Florida.
Barnett contends that information about which documents have been redacted "will enable [him] to ascertain whether there has been full compliance with the discovery order entered at the time of trial and with the discovery order entered on" his motion under section 1054.9. He does not explain how this is so, however. Knowing that something is missing from a document does not necessarily give any basis for knowing what is missing.
In any event, under section 1054.9 Barnett is entitled to discovery of materials to which he would have been entitled at time of trialnothing more, nothing less. If part of a document falls within that category, then he is entitled to that part of the document, but not the rest. Just as he has no right to know exactly which documents the People have withheld from discovery because they are not materials to which he would have been entitled at time of trial, Barnett has no right to know exactly what portions of the documents the People have produced were redacted because those portions are not materials to which Barnett would have been entitled at time of trial. Accordingly, the trial court did not abuse its discretion in denying this request.

DISPOSITION
The petition is granted in part and denied in part. Having served its purpose, the alternative writ is discharged.
Let a peremptory writ of mandate issue directing the respondent court to modify its discovery order by granting Barnett's requests for the following materials:
(1) "[a]ll original notes taken by any police officer relating to the interview of any witness to be called to testify against the defendant," including the 22 out-of-state officers identified by Barnett;
(2) the criminal records of trial Jurors C.L. and L.F.; and
*89 (3) "documentation in any form of any person conveying information to law enforcement in Butte County, including [the task force], regarding Mr. Barnett, the case against him or the witnesses in his case," including "information about any person who conveyed information to law enforcement regarding `street talk' about the case, and any `street talk' to the effect that Mr. Barnett was innocent, was being set up and/or was framed."
Scotland, P. J., and Sims, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] As relevant here, that statute provides as follows: "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c) [relating to access to physical evidence for the purpose of examination], order that the defendant be provided reasonable access to any of the materials described in subdivision (b). [¶] (b) For purposes of this section, `discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." (§ 1054.9.)
[3] The Supreme Court has since denied both petitions. (In re Barnett (July 27, 2005, S096831) (petn. den. by order); In re Barnett (May 17, 2006, S120570) (petn. den. by order).) As far as we know, Barnett's federal petition remains pending.
[4] Senate Bill No. 1391 (2001-2002 Reg. Sess.), the legislation that enacted section 1054.9, passed the Assembly by a vote of 42 to 31. (5 Assem. J. (2001-2002 Reg. Sess.) p. 8239.) Since the membership of the Assembly is 80 (Cal. Const., art. IV, § 2, subd. (a)), the bill passed with the concurrence of only 52.5 percent of the Assembly membership.
[5] That provision specifies that "[n]o order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties." (§ 1054.5, subd. (a).)
[6] Originally, there were 25 requests at issue, but in his replication, Barnett withdrew his objection to the denial of one of those requests.
[7] We will refer to these materials as category No. 1 materials.
[8] We will refer to these materials, respectively, as category No. 2 materials, category No. 3 materials, and category No. 4 materials.
[9] Barnett explained elsewhere that the six law enforcement agencies for whom these 22 officers worked had been involved in investigating Barnett's prior crimes that were used as aggravating factors in the penalty phase of his trial.
[10] There is reason to believe the court may not have intended to limit its ruling in this manner. The court's exclusion of the out-of-state officers from its ruling on Barnett's request for original notes occurred because the court referenced a particular page and line number page 29, line 1of one of Barnett's briefs. Had the court referenced line 21, instead of line 1, the out-of-state officers would have been encompassed in the ruling. There are two reasons to believe the trial court's reference to line 1, instead of line 21, was a mistake. First, the court's definition of "law enforcement authorities" in its ruling on "Point One" was broad enough to encompass the out-of-state officers because those officers appear to have investigated charged or uncharged crimes that were presented against Barnett in the guilt phase or as an aggravating factor in the penalty phase of the case. Second, immediately after the ruling at issue here, the trial court granted a request for (among other things) "all notes and memorandum of any kind, handwritten or typed . . . relating to statements made by any witness the prosecution intended to call . . . ." This request (discovery item No. 7) was broad enough to subsume Barnett's more specific request for "original notes" at issue here (discovery item No. 6), but the trial court did not exclude the out-of-state officers from the scope of this subsequent ruling.

Given that the court's ruling on discovery item No. 7 appears to require the People to provide Barnett access to all of the material that he is otherwise seeking under discovery item No. 6, we could decline to further consider Barnett's challenge to the partial denial of his request for original police notes. To provide clarity, howeverand because neither party has raised the point of whether discovery item No. 6 is subsumed in discovery item No. 7we choose to address and resolve the parties' dispute over discovery item No. 6.
[11] The People use this argument as one of their responses to virtually every one of the discovery requests remaining at issue in this proceeding. Having rejected the argument here, we will not address it again.
[12] Barnett did not submit any declarations to support the unsworn statements in his motion, and thus there was technically no evidence to support the showing required by section 1054.9; however, the People forfeited any objection on this ground by not raising it in the trial court.
[13] The People use this argument as one of their responses to virtually every one of the discovery requests remaining at issue in this proceeding. Having rejected the argument here, we will not address it again.
[14] As we have noted, the February 1987 discovery order required the prosecution to disclose "[t]he criminal record of all witnesses who may be called to testify at the trial of this case." At the same time, however, the court denied Barnett's request for discovery of "all pending criminal charges against [those witnesses] anywhere in the State of California, all information regarding the current parole and/or probation status of such persons, and all arrests, criminal charges, ongoing criminal investigations, or actions pending anywhere in the State of California since the date of the alleged offense charged in the Information," except as to Barnett and his alleged coparticipant. Thus, the trial court apparently concluded the details specified in the second request were not part of the "criminal records" the court was ordering produced in response to the first request. This explains why Barnett has not claimed those details were subject to disclosure under Steele because they came within the scope of the February 1987 discovery order and instead is relying solely on Brady to justify his request for those details.
[15] At this point, we are concerned only with evidence a defendant seeks on the ground it was subject to the prosecution's constitutional duty to disclose exculpatory evidence under Brady. We express no opinion on what must be shown to obtain evidence that was subject to a statutory duty to provide discovery, such as the duty imposed on the prosecution by subdivision (e) of section 1054.1 to disclose "[a]ny exculpatory evidence." The reciprocal discovery statutes (§ 1054 et seq.) of which section 1054.1 is a part were not enacted until 1990, two years after Barnett's trial. Thus, those statutes do not govern what Barnett would have been entitled to at time of trial and therefore have no bearing on his section 1054.9 motion.
[16] We recognize that the Supreme Court in Steele directed the superior court to issue a discovery order under section 1054.9 for materials the defendant contended fell within the Brady duty of disclosure without expressly requiring the defendant to demonstrate materiality. Instead, the Supreme Court simply noted that "[i]f the defense had specifically requested the prosecution to provide all of petitioner's prison records in its possession," "the prosecution would have been obligated to provide them" "assuming the records were otherwise material." (In re Steele, supra, 32 Cal.4th at p. 702, second italics added.) By this assertion, however, the court did recognize that materiality was an essential element in showing that the defendant would have been entitled at time of trial to the documents now sought, and since Steele elsewhere makes clear that the defendant bears the burden of making this showing, it follows that the showing of materiality must be made by the defendant before he is entitled to a discovery order under section 1054.9.
[17] Again, at this point we are concerned only with materials to which a defendant claims entitlement under the constitutional duty of disclosure, and not with materials to which a defendant may claim entitlement under a discovery order issued at time of trial or a statutory duty of disclosure.
[18] We note that the defendant in In re Sassounian, supra, 9 Cal.4th at page 535 made the same mistake over a decade ago in pursuing habeas corpus relief based on an alleged Brady violation. (See Sassounian, at p. 550, fn. 14.) Thus, there can be little (if any) excuse for Barnett's failure to do so here.
[19] At his murder trial, two defense witnesses testified that "it was Cantwell who arranged to have Eggett killed and defendant framed for the murder." (People v. Barnett, supra, 17 Cal.4th at p. 1079.)
[20] We note that there is no explicit authority in section 1054.9 or Steele for the declaration requirement the trial court imposed here. We have no occasion to decide, however, whether the imposition of this requirement was improper, because the People did not seek review of the trial court's discovery order by filing a petition for writ of mandate, nor have they raised any issue regarding the validity of this requirement in response to Barnett's petition.
[21] The People use this argument as one of their responses to virtually every one of the discovery requests remaining at issue in this proceeding. Having rejected the argument here, we will not address it again.
[22] Barnett notes that "[r]ecords regarding drug use and abuse" fall within the scope of one of his earlier requests, which we have addressedand rejectedalready. He also notes that the trial court granted him access to the prison records of the People's witnesses in response to another request. Accordingly, in considering the present request, welike Barnettlimit ourselves to probation, juvenile, and mental health records.
[23] In one of his habeas corpus petitions, Barnett alleged that while Juror C.L. obtained a certificate of rehabilitation from the superior court in 1984, the Governor refused to pardon him and therefore his civil rights were not restored. (See § 4852.17 [civil rights restored by the granting of "a full and unconditional pardon by the Governor, based upon a certificate of rehabilitation"].)
[24] Barnett asks us to infer that the People did "conduct[] juror investigations" from the fact that "[i]n response to other discovery requests, [the People were] quick to say that the requested materials did not exist," "[y]et as to juror investigations, [they] made no such denial." That criminal records for Jurors C.L., L.F., and potentially others may exist (which may be inferred from the People's failure to assert otherwise in response to Barnett's request for such records) does not mean the People conducted investigations of those jurors at time of trial and thus availed themselves of those records. Accordingly, the inference Barnett asks us to draw is not a reasonable one.
[25] Specifically, Barnett asserted that the materials fell within the scope of 35 specific discovery requests in the discovery order from trial, 34 of which the trial court granted.
[26] Because discovery at the time of Barnett's trial was governed by California case law, it is appropriate for us to consider that case law in determining whether Barnett would have been entitled to these materials if he had asked for them at that time.
[27] Barnett no longer contends this request was for materials that fell within the scope of the February 1987 discovery order.
[28] Barnett asserts he offered an explanation "[i]n his habeas corpus petition, which he lodged with the superior court and appended to his [mandamus] petition in this Court as an exhibit." As we have already pointed out, however, it is not our duty to cull the thousands of pages of Barnett's habeas corpus petition to find the explanation that he should have offered directly to this court in his mandamus petition.
[29] The People apparently obtained these documents from the task force pursuant to a subpoena issued in March 2005.